Sophia M. Rios, SBN 305801
srios@bm.net
**BERGER MONTAGUE PC**
401 B Street, Suite 2000
San Diego, CA 92101
Tel. (619) 489-0300
Fax  (215) 875-4604

E. Michelle Drake*
emdrake@bm.net
**BERGER MONTAGUE PC**
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413
Tel. (612) 594-5933
Fax  (612) 584-4470
*pro hac vice forthcoming*

*[Additional Counsel Listed on Signature Page]*
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| HENRY YEH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TWITTER, INC.,<br><br>Defendant. | Case No.: 4:23-cv-01790-HSG<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT TWITTER, INC.'S MOTION TO DISMISS**<br><br>Judge:    Hon. Haywood S. Gilliam, Jr.<br>Crtrm:   2 (4th Floor)<br>Date:     August 24, 2023<br>Time:    2:00 p.m. |

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................................1

II.     ISSUES TO BE DECIDED (CIV. L.R. 7-4(a)(3)) .......................................................3

III.    ARGUMENT .....................................................................................................................3

        A.  Plaintiff Adequately Alleges a Breach of Express Contract Claim .........................3

            1.  Twitter Breached the Privacy Policy ...........................................................3

            2.  Plaintiff Alleges Cognizable Contract Damages .........................................7

        B.  Plaintiff Adequately Alleges a UCL Claim ...........................................................10

            1.  Plaintiff Alleges Economic Injury ............................................................10

            2.  Plaintiff Has Properly Alleged Actual Reliance .......................................12

            3.  Plaintiff Alleges Unlawful or Unfair Conduct .........................................13

                i.   Plaintiff States a Claim Under the "Unfair" Prong ......................13

                ii.  Plaintiff States a Claim under the "Unlawful" Prong ..................16

        C.  Plaintiff's Breach of Implied Contract and Unjust Enrichment Claims are Proper .......................................................................................................................17

            1.  Twitter Argues Against the Existence of an Express Contract ..................17

            2.  The Statute of Limitations Does Not Bar Plaintiff's Claims .....................20

            3.  Plaintiff Properly Pleads the Elements of the Claims ...............................22

        D.  Leave to Amend Should be Freely Granted ...........................................................22

IV.     CONCLUSION ...............................................................................................................22

**TABLE OF AUTHORITIES**

<u>Cases</u>

*In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d 1197 (N.D. Cal. 2014) ........................13

*In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953 (N.D. Cal. 2016) ..............13, 16

*Balser v. Hain Celestial Grp., Inc.*, 640 F. App'x 694 (9th Cir. 2016) ..............................14

*Bernson v. Browning-Ferris Industries of Cal., Inc.*, 7 Cal.4th 926 (1994) ......................10

*Block v. eBay, Inc.*, 747 F.3d 1135 (9th Cir. 2014) ............................................................7

*Brown v. Google LLC*, 525 F. Supp. 3d 1049 (N.D. Cal. 2021) ...................................20, 21

*Brown v. Google LLC*, No. 20-CV-03664-LHK, 2021 WL 6064009 (N.D. Cal. Dec. 22, 2021)
.........................................................................................................................6, 9, 11

*Calhoun v. Google LLC*, 526 F. Supp. 3d 605 (N.D. Cal. 2021) ........................................11

*California Spine & Neurosurgery Inst. v. United Healthcare Ins. Co.*, 2019 WL 4450842 (N.D.
Cal. Sept. 17, 2019) ....................................................................................................18, 19

*Chapman v. Skype, Inc.*, 220 Cal App. 4th 217 (2013) .....................................................12

*Consul Ltd. v. Solide Enteres., Inc.*, 802 F.2d 1143 (9th Cir. 1986) ....................................5

*Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152 (9th Cir. 2012) ...............................15, 16

*Dorfman v. Nutramax Lab'ys, Inc.*, 2013 WL 5353043 (S.D. Cal. Sept. 23, 2013) ..............14

*Elation Sys., Inc. v. Fenn Bridge LLC*, 71 Cal. App. 5th 958 (2021) ....................................8

*ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023 (9th Cir. 2016) ....................................18

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767 (N.D. Cal. 2019)
......................................................................................................................3-4, 5, 7, 18

*Friedman v. AARP, Inc.*, 855 F.3d 1047 (9th Cir. 2017) ...................................................12

*In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968 (N.D. Cal. 2014) .....................7

*Hammerling v. Google LLC*, 2022 WL 2812188 (N.D. Cal. July 18, 2022) ..........................16

*In re iPhone Application Litig.*, 844 F. Supp. 2d 1040 (N.D. Cal. 2012) ...............................5

*Kang v. P.F. Chang's China Bistro, Inc.*, 844 F. App'x 969 (9th Cir. 2021) .......................14

*Kuhn v. L'Oreal USA S/D, Inc.*, No. 19-CV-04021-HSG, 2020 WL 1307004 (N.D. Cal. Mar. 19,
2020) ..............................................................................................................................22

*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011) ............................................. 10, 11

*Lopez v. Apple, Inc*., 519 F. Supp. 3d 672 (N.D. Cal. 2021) ............................................. 6

*Lopez v. Apple, Inc*., 558 F. Supp. 3d 821 (N.D. Cal. 2021) ............................................. 7

*Lundy v. Facebook Inc*., No. 18-CV-06793-JD, 2021 WL 4503071 (N.D. Cal. Sept. 30, 2021) .. 8

*Meta Platforms, Inc. v. BrandTotal Ltd.*, 20-CV-07182-JCS, 2022 WL 1990225 (N.D. Cal. June 6, 2022) ............................................. 8

*Monaco v. Bear Stearns Residential Mortg. Corp.*, 554 F. Supp. 2d 1034 (C.D. Cal. 2008) ...... 5

*Moore v. Centrelake Medical Grp., Inc.*, 83 Cal. App. 5th 515 (2022) ............................................. 9

*Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007 (9th Cir. 2020) ............................................. 12, 13

*Obertman v. Electrolux Home Care Prod., Inc.*, 482 F. Supp. 3d 1017 (E.D. Cal. 2020) ........... 18

*Palantir Techs. Inc. v. Abramowitz*, 19-CV-06879-BLF, 2022 WL 2952578 (N.D. Cal. July 26, 2022) ............................................. 7

*In re Pepperdine Univ. Tuition & Fees COVID-19 Refund Litig.*, 2023 WL 2576766 (C.D. Cal. Mar. 7, 2023) ............................................. 19

*Peterson v. Cellco P'ship,* 164 Cal. App. 4th 1583 (2008) ............................................. 14

*Putnam v. Putnam Lovell Grp. NBF Secuirites, Inc.*, 2006 WL 1821207 (N.D. Cal. June 30, 2006) ............................................. 19

*Rice v. Kimberly-Clark Corp*., 2022 WL 16804522 (E.D. Cal. Nov. 8, 2022) ............. 13, 14, 16

*Rubenstein v. Neiman Marcus Grp. LLC*, 687 F. App'x 564 (9th Cir. 2017) ........................ 16

*Santa Clara Waste Water Co. v. Allied World Nat'l Assurance Co*., 18 Cal. App. 5th 881 (2017) ............................................. 19

*Sidibe v. Sutter Health*, No. 12-CV-04854-LB, 2017 WL 4310711 (N.D. Cal. Sept. 28, 2017) ............................................. 3, 22

*SocialApps, LLC v. Zynga, Inc.*, 2012 WL 381216 (N.D. Cal. Feb. 6, 2012) ................. 18, 19

*Tanadgusix Corp. v. Huber*, 404 F.3d 1201 (9th Cir. 2005) ............................................. 5

*Tradeshift, Inc. v. BuyerQuest, Inc.*, No. 20-CV-01294-RS, 2021 WL 4306011 (N.D. Cal. Sept. 22, 2021) ............................................. 8

*United States v. Plummer*, 941 F.2d 799 (9th Cir. 1991) ............................................. 5

*Walters v. Vitamin Shoppe Industries, Inc.*, 701 F. App'x 667 (9th Cir. 2017) ............... 14

*Williams v. Apple, Inc.*, No. 19-cv-04700-LHK, 2021 WL 2186223 (N.D. Cal. May 28, 2021) ... 4

*Williams v. Gerber Prod. Co.*, 552 F.3d 934 (9th Cir. 2008) ................................................ 14, 16

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ................................................................................................................................................ 7

*Yari v. Prod. Guild of Am., Inc.*, 161 Cal. App. 4th 172 (2008) ............................................. 4

<u>Rules & Statutes</u>

Fed. R. Civ. P. 12 ..................................................................................................................... 1

Fed. R. Evid. 201 ..................................................................................................................... 1

Cal. Bus. & Prof. Code § 17200, *et seq.* ......................................................................... *passim*

Cal. Bus. & Prof. Code § 22576 ........................................................................................ 2, 16, 17

Cal. Civ. Code § 3360 ............................................................................................................. 7

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Knowing that Plaintiff Henry Yeh's ("Plaintiff") allegations readily satisfy the lenient pleading standards required to state claims under Rule 12(b)(6), Defendant Twitter, Inc. ("Twitter") attempts to sidestep that reality by attaching nine exhibits to its Motion to Dismiss (ECF No. 31) ("Motion" or "Mot.") including its terms of use and privacy policy ("Privacy Policy") that, at best for Twitter, raise a plethora of factual issues that cannot be decided on a motion to dismiss. Contemporaneously with its Motion, Twitter filed a Request for Judicial Notice urging the Court to consider these nine exhibits under the doctrine of "incorporation by reference" or Fed. R. Evid. 201(b) (i.e., "judicial notice") and to rely upon them in dismissing Plaintiff's Complaint. But even if the Court can consider those exhibits, they do nothing more than raise questions of fact for the jury that are premature for consideration at the pleading stage. Nonetheless, even with the benefit of those extraneous materials, Twitter's Motion nonetheless fails on every count.

First, Plaintiff sufficiently pleads each element of his breach of express contract claim: (1) the existence of an express contract (i.e., Twitter's Privacy Policy, ¶¶ 114-18[1]); (2) Plaintiff's performance of his side of the agreement (i.e., use of Twitter's services and the provision of personal information to Twitter, ¶ 124); (3) that Twitter breached numerous provisions of that express contract (¶ 116); and (4) that Plaintiff suffered damages—both nominal and actual (¶¶ 10, 33-36)—as a result (¶¶ 125-27). Nothing further is required under Rule 8(a)'s lenient notice pleading standard to state a claim for breach of contract. As such, Twitter's belabored arguments based on other language buried in a privacy policy it attaches to its Motion are nothing more than red herrings that raise premature questions of fact as to what Twitter's Privacy Policy states (or fails to state), whether Plaintiff saw or did not see the provisions Twitter highlights, and what Twitter's unilateral interpretation is of those provisions. Mot. at 2-3, 8-9.

---

[1] All references herein to "¶" refer to the enumerated paragraphs of Plaintiff's Class Action Complaint, ECF No. 1-1 ("Complaint").

Second, Plaintiff has adequately alleged a claim under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL"), including both unlawful and unfair conduct. Twitter argues that Plaintiff failed to allege lost money or property, but Plaintiff's Complaint contains numerous detailed allegations that he surrendered in a transaction more than he otherwise would have, which is sufficient to allege injury under the UCL. ¶¶ 3-5, 10, 33, 36, 40, 78. Twitter further challenges Plaintiff's UCL claim on the grounds that he failed to allege reliance, but Plaintiff alleges reliance in numerous ways including: (1) Twitter's material misrepresentations about the ways in which it would use Plaintiff's phone number (¶¶ 38, 44, 51, 57); and (2) that Plaintiff provided Twitter with his information for purposes of login verification and would not have done so had he known Twitter would use it for marketing purposes (¶¶ 7-33), both of which are sufficient to create an inference of actual reliance sufficient to support Plaintiff's UCL claim.

Plaintiff likewise sufficiently alleges Twitter's conduct was "unfair" under the UCL in multiple ways including by violating the FTC Act and the FTC's 2011 Order barring Twitter from making misrepresentations about the security of nonpublic consumer information (¶ 29) and "unlawful" under the UCL because it violates the 2011 Commission Order and Section 5 of the FTC Act, the Privacy Shield and Frameworks, and Cal. Bus. & Prof. Code § 22576 (¶ 137). Again, Twitter hides from that reality by pointing to purported disclosures at the time Plaintiff created a Twitter account (Mot. at 16-17), but those disclosures have little bearing on Plaintiff's UCL claim, which is premised on Twitter's post-account opening representations. At best for Twitter, whether its Privacy Policy disclosures are conspicuous and consistent with the representations in Twitter's data collection pathways (they are not) is a disputed question of fact that cannot be decided on a motion to dismiss.

Third, despite moving to dismiss Plaintiff's express contract claim, Twitter turns around and argues Plaintiff's unjust enrichment and implied contract claims "are barred by the parties' express contract." Mot. at 19. Twitter's argument is unavailing because Plaintiff pleads those claims in the alternative to his express contract claims. Plaintiff's unjust enrichment and implied contract claims readily satisfy Rule 8(a)'s lenient notice pleading standards: Plaintiff's unjust

enrichment claim is premised on the benefits Twitter earned through its independently misleading representations that user contact information would be used only for security-related purposes (¶¶ 37-57), and Plaintiff alleges an implied contractual term that Twitter would use Plaintiff's personal information, collected after account opening, only for security purposes and no other purposes such as the marketing or advertising Twitter actually used it for. And the doctrine of fraudulent concealment nullifies Twitter's statute of limitations argument for both claims.

Finally, Twitter improperly tries to bootstrap rulings in prior cases filed against it as a basis to deny Plaintiff leave to amend his Complaint in the event the Court grants Twitter's Motion, but that suggestion is belied by bedrock precedent in this District that "Rule 15 favors a liberal policy towards amendment" and that "[a] court should freely grant leave to amend." *Sidibe v. Sutter Health*, No. 12-CV-04854-LB, 2017 WL 4310711, at *2 (N.D. Cal. Sept. 28, 2017).

For all of these reasons, as explained in greater depth below, Twitter's motion should be denied.

## II.   ISSUES TO BE DECIDED (CIV. L.R. 7-4(a)(3))

Whether Plaintiff adequately alleged claims for violation of California's Unfair Competition Law (Count III), breach of contract (Count I) or—in the alternative to his breach of contract claim—breach of implied contract (Count II) and unjust enrichment (Count IV).

## III.   ARGUMENT

### A.  Plaintiff Adequately Alleges a Breach of Express Contract Claim

Twitter maintains that the Privacy Policy disclosures defeat Plaintiff's claim because they reveal Twitter's data use practices and, thus, no beached term or injury results. But Twitter's arguments only serve to reinforce that, at best, there are factual disputes over the sufficiency and meaning of the Privacy Policy—including Twitter's disclosures.

#### 1.  *Twitter Breached the Privacy Policy*

In urging the Court to find that users unambiguously agreed to the unconstrained marketing usage of contact information, Twitter offers its own interpretations of the purported disclosures and likely effects on consumers—a disputed fact which should not be resolved on a motion to dismiss.  "The elements for breach of contract under California law are: (i) the existence

of a contract; (ii) the plaintiff's performance or excuse for nonperformance of its side of the agreement; (iii) the defendant's breach; and (iv) resulting damage to the plaintiff." *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 801 (N.D. Cal. 2019).[2] At the motion to dismiss stage, courts must determine whether the contract is "reasonably susceptible" to a plaintiff's interpretation. *Id.* at 789. Additionally, "the contract language must be assessed objectively, from the perspective of a reasonable user." *Id.*; *see Williams v. Apple, Inc*., No. 19-cv-04700-LHK, 2021 WL 2186223, at *5 (N.D. Cal. May 28, 2021) ("[C]ourts in construing and applying a standardized contract seek to effectuate the reasonable expectations of the average member of the public who accepts it.").

The Privacy Policy repeatedly promises that Twitter respects user information and uses or shares such information only with consent. In its opening paragraphs, the 2018 Privacy Policy promises "We believe you should always ***know*** what data we collect from you ***and how we use it***, and that you should have meaningful ***control over both***" and, again, "We give you control through your settings to limit the data we collect from you ***and how we use it***, and to control things like account security, [and] marketing preferences . . . ." Privacy Policy at 1 (emphasis added). The Privacy Policy also promises, in Section 3.1, that Twitter will "***share*** or disclose your personal data with your consent or at your direction" and not otherwise. Privacy Policy § 3.1 (emphasis added). Thus, in context, the Privacy Policy expressly promises that Twitter will only "use" and "share" consumers' contact information after fully disclosing the intended use and securing user consent for that use. Against this backdrop, Twitter's contrary arguments should be rejected.

First, Section 1.3 does not definitively notify users that their contact information may be used for marketing and advertising purposes irrespective of the ***context*** in which information was collected. Mot. at 8-9. Indeed, the vague statement in Section 1.3 that "Twitter also uses your

---

[2] A claim for "breach of implied contract has the same elements as does a cause of action for breach of contract, except that the promise is not expressed in words but is implied from the promisor's conduct." *Yari v. Prod. Guild of Am., Inc*., 161 Cal. App. 4th 172, 182 (2008) (cites omitted).

contact information to market to you" does not permit the conduct here. ¶ 120. That section, titled "Contact Information and Address Books," describes how Twitter will use contact information collected during the account registration process. It does not speak to whether the information at issue in this case—i.e., contact information collected after account registration via security pathways—may be used for marketing purposes.  ¶¶ 121-23.

To be sure, because the term "contact information" is left undefined in Section 1.3, a reasonable user could understand that term, in context, as comprising a subset of "personal data" collected during account opening covered by Section 1.1. As Twitter acknowledges, Section 1.1 "discusses data provided at account creation," Mot. at 16-17, which includes email addresses and phone numbers. At minimum, the conflict between Section 1.1 (addressing contact information provided at account opening) and the other purportedly unrestricted disclosures relied upon by Twitter presents an issue of contract interpretation unsuitable for a motion to dismiss. *United States v. Plummer*, 941 F.2d 799, 803 (9th Cir. 1991) (under California law, what the parties intended by an ambiguous contract is a factual determination); *Monaco v. Bear Stearns Residential Mortg. Corp.*, 554 F. Supp. 2d 1034, 1040 (C.D. Cal. 2008) ("[w]here the language 'leaves doubt as to the parties' intent,' the motion to dismiss must be denied.") (quoting *Consul Ltd. v. Solide Enteres., Inc.*, 802 F.2d 1143, 1149 (9th Cir. 1986)); *see also Tanadgusix Corp. v. Huber*, 404 F.3d 1201, 1205 (9th Cir. 2005) ("A contract is ambiguous if reasonable people could find its terms susceptible to more than one interpretation."); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1076 (N.D. Cal. 2012) ("However, '[i]f a contract is capable of two different reasonable interpretations, the contract is ambiguous.'"); *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d at 798-83 (holding consent is not an "all or nothing proposition" and that an agreement to share some data does not waive all privacy protections).

Twitter's resort to Section 2.6 also misses the mark. Mot. at 9-10. That Section generally states that Twitter will "use the information described in this Privacy Policy to help make our advertising more relevant to you," but again, it does not clearly encompass contact information collected post-account registration in connection with issues of account security.

Second, Twitter argues that Plaintiff fails to identify a breached contractual provision because the Privacy Policy contains no promise "not to use account holder information for advertising purposes." Mot. at 8. Not so. The Privacy Policy's preamble promises that its users (1) "should always know what data we collect from you and how we use it," and (2) "have meaningful control over both." ¶ 114. Additionally, the preamble affirms that Twitter "give[s] you control through your settings to limit the data we collect from you and how we use it" including "marketing preferences." *Id.* These provisions were breached when Twitter "used" and "shared" contact information for marketing purposes, collected through post-account registration security pathways, without clearly disclosing that purpose or giving users "control" over that "use."

For the same reason, Twitter also breached Section 3.1 of the Privacy Policy as it did "share or disclose . . . [users'] personal data" without users' "consent or at [users'] direction"— that is, by integrating users' contact information with third-party targeted advertising. ¶¶ 29, 70-71, 115-117. To be clear, while Twitter is not alleged to have externally "disclosed" raw user contact information to third parties, Plaintiff alleges that Twitter effectively "shared" such information by "aiding advertisers in reaching their preferred audiences." ¶¶ 5, 26, 29. Indeed, Section 3.1 addresses two different behaviors—whether Twitter may "share or disclose" information. And by listing both terms separately, a reasonable consumer would understand each term to mean something different—otherwise Twitter would have no reason to list both. *See Brown v. Google LLC*, No. 20-CV-03664-LHK, 2021 WL 6064009, at *12 (N.D. Cal. Dec. 22, 2021) ("[I]ndividual clauses and particular words must be considered in connection with the rest of the agreement, and all of the writing and every word of it will, if possible, be given effect.").

Third, according to Twitter, the Privacy Policy's preamble contains "no promissory language" and is not enforceable notwithstanding Twitter's explicit representations regarding data use. Mot. at 10. But Twitter's representations that users should "always know what data we collect from you and how we use it" and "have meaningful control over both" are explicit, binding promises. Courts have held that companies are bound by such promises they post on their websites.

For example, in *Lopez v. Apple, Inc*., 519 F. Supp. 3d 672 (N.D. Cal. 2021), the court rejected Apple's argument that "broad statements of company policy" in a privacy policy cannot

form a contract. *Id.* at 691-92.[3] The following statements were "concrete representations about Apple's data collection and use practices" when "viewed in context": (1) "Siri is designed to protect your information and enable you to choose what you share"; (2) "Your personal data should always be protected on [the Siri Device] and never shared without [users'] permission"; and (3) "We're always up front about what we collect from you, and we give you the controls to adjust these settings." *Id.* Indeed, the first statement "implicitly promises that no other sharing will occur" and the third statement promises that Apple "will disclose any other collection not already disclosed." *Id.* These statements are analogous to Twitter's.

Other decisions are in accord. *See In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d at 801 (Facebook's promise that "You own all of the content and information you post on Facebook, and you can control how it is shared through your privacy and application settings" was breached when it disclosed user information); *see also In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2017 WL 3727318, at *44 (N.D. Cal. Aug. 30, 2017) (adequately alleging Yahoo breached representation in privacy policy that "We are committed to ensuring your information is protected and apply safeguards in accordance with applicable law."); *In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968, 986 (N.D. Cal. 2014) (same).[4]

### 2. *Plaintiff Alleges Cognizable Contract Damages*

Twitter argues that Plaintiff failed to allege "cognizable damages for both contract claims" because both "claims require as an element 'appreciable and actual damage'" (Motion at 10), but Twitter is incorrect because "appreciable and actual damage" is not a necessary element of Plaintiff's contract claims. Instead, a breach, standing alone, entitles Plaintiff to nominal damages. Cal. Civ. Code § 3360 ("When a breach of duty has caused no appreciable detriment to the party affected, he may yet recover nominal damages."); *Palantir Techs. Inc. v. Abramowitz*, 19-CV-06879-BLF, 2022 WL 2952578, at *3 (N.D. Cal. July 26, 2022) ("recent California Court of

---

[3] In a subsequent order, the breach of contract claim was upheld in full. *Lopez v. Apple, Inc.*, 558 F. Supp. 3d 821, 827 (N.D. Cal. 2021).

[4] *Block v. eBay, Inc.*, 747 F.3d 1135, 1138-40 (9th Cir. 2014) does not help Twitter. There, the statement "We are not involved in the actual transaction between buyers and sellers" was merely a broad description of the service rather than a promise to perform, unlike Twitter's promises.

Appeal authority confirms that nominal damages are available as a matter of law where a contract has been breached.") (citing *Elation Sys., Inc. v. Fenn Bridge LLC*, 71 Cal. App. 5th 958 (2021)); *Meta Platforms, Inc. v. BrandTotal Ltd.*, 20-CV-07182-JCS, 2022 WL 1990225, at *22 (N.D. Cal. June 6, 2022) (same). Even if actual damage were necessary, Plaintiff's allegations are sufficient.

First, dismissal is not warranted on the basis that the limitation of liability provision precludes Plaintiff's breach of contract claim. Among other things, Plaintiff seeks nominal damages and disgorgement of profits. "These types of damages are not covered by the limitation of liability provision [Twitter] points to in its motion to dismiss." *Lundy v. Facebook Inc.*, No. 18-CV-06793-JD, 2021 WL 4503071, at *2 (N.D. Cal. Sept. 30, 2021); *see also Tradeshift, Inc. v. BuyerQuest, Inc.*, No. 20-CV-01294-RS, 2021 WL 4306011, at *8 (N.D. Cal. Sept. 22, 2021) (rejecting defendant's argument that plaintiff's contract damages were barred by limitation of liability clauses forbidding special damages because "[a]s a threshold matter, [plaintiff] argues it also seeks disgorgement of damages from [defendant's] unjust enrichment. This is an equitable remedy, which would salvage [plaintiff's] argument if lost profits were barred."). Additionally, Plaintiff seeks benefit-of-the-bargain damages and diminution in value damages—both based on the value of the contact information provided to Twitter. Whether this damage is categorized as general or special is a question of fact. *Tradeshift, Inc.*, 2021 WL 4306011, at *8.

Second, Plaintiff alleges facts evidencing his injury which Twitter chooses to ignore. The Complaint contains ample allegations establishing the existence of a market in which Plaintiff could have and would have participated in if he had known Twitter was using his personal data for marketing purposes rather than for the account verification and recovery purposes it touted. Plaintiff alleges in detail the nature of the actual market for this contact data: "[N]umerous marketing services and consultants, offering advice to companies on how to build their email and mobile phone . . . direct putative advertisers to ***offer consumers something of value in exchange for their personal information***" because "***[n]o one is giving away their email address for free***." ¶ 34 (emphasis added). These marketers advise offering "a book, guide, webinar, course or something else valuable." *Id.* "[Y]ou need to answer the magical question in your prospect's mind 'What's in it for me?'" *Id.* "When you're asking for something valuable like a customer's phone

number, you need to make it worth their while. What can you give your customers that no one else can?" *Id.*

Furthermore, marketing companies have measured the value "derived from obtaining such email addresses, indicating increased revenue from each email address of: $33, and that 'the dollar value [that] each customer [spent] that received email was $625 for the year compared with $113 for each customer that did not receive any email.'" ¶ 35. "[T]he value of a mobile telephone number was multiples higher: $100.87." *Id.* The consensus of these marketing experts is clear: contact data has a substantial dollar value and to obtain it for marketing purposes from today's consumer, you must offer them something of value. ¶¶ 33-36. That is the definition of a market. And Plaintiff also specifically alleges that he "valued his telephone number and email address and would not have provided them without receiving value in exchange had he known this personal information would be used for marketing purposes, rather than solely for the login verification and account recovery purposed Twitter touted." ¶¶ 10, 33.[5]

Thus, Plaintiff's allegations set forth the market for this information, and "that consumers—including the Plaintiff and each class member here—value their email addresses and phone numbers and do not give up their contact information for marketing purposes for free; yet that is precisely what Twitter was able to do here through its deception." ¶ 36. Having offered detailed allegations regarding the existence of a market for his personal data and his practice and intent not to "give up his contact information for marketing purposes for free," Plaintiff has alleged cognizable benefit-of-the-bargain damages. In other words, what Plaintiff received (Twitter's services and unauthorized use and sharing of personally identifying information ("PII")) is worth less than what Plaintiff bargained for (Twitter's services with the promised limitations and controls). *See Brown*, 2021 WL 6064009, at *15 ("[B]y inducing Plaintiffs to give Google their data without payment, Google caused Plaintiffs to 'acquire in a transaction less[]

---

[5] Twitter's related contention that Plaintiff suffered no damages because he did not pay cash for the service attacks a straw man. Mot. at 11-12. As explained above, Plaintiff alleges he provided his contact information in exchange for using the service based on Twitter's representations in the Privacy Policy and security pathways, and that his information had value.

1  than [they] otherwise would have.'"); *Moore v. Centrelake Medical Grp., Inc*., 83 Cal. App. 5th

2  515, 532 (2022) ("federal cases applying California law have allowed plaintiffs to seek contract

3  damages for the lost value of promised data security or privacy"). Likewise, these allegations

4  support the loss of PII measure because Plaintiff alleges that he could sell his phone number and

5  email address, and that his contact information had economic value. *E.g.,* ¶¶ 10, 33-36.

**B.   Plaintiff Adequately Alleges a UCL Claim**

**1.   *Plaintiff Alleges Economic Injury***

8        A UCL claim is available to any "person who has suffered injury in fact and has lost

9  money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. Under

10 California law "[t]here are innumerable ways in which economic injury from unfair competition

11 may be shown" under the UCL. *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323-24 (2011).

12 For example, a "plaintiff may (1) surrender in a transaction more, or acquire in a transaction less,

13 than he or she otherwise would have; (2) have a present or future property interest diminished;

14 (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required

15 to enter into a transaction, costing money or property, that would otherwise have been

16 unnecessary." *Id.* Even an "identifiable trifle" of economic injury will do. *Id.*

17       Here, Plaintiff has sufficiently alleged that he surrendered in a transaction more than he

18 otherwise would have. Specifically, Plaintiff alleged that he valued his telephone number and

19 email address and would ***not*** have provided them to Twitter for free had he known that they were

20 being used not merely for the extra layer of account security they were promised, but also for

21 marketing purposes that would solely benefit Twitter and its advertisers. *See* ¶¶ 3-5, 10, 33, 36,

22 40, 78.

23       The Court previously rejected the UCL claim on the basis that "[n]umerous courts have

24 held that disclosure of personal information alone does not constitute economic or property loss

25 sufficient to establish UCL standing, unless the plaintiff provides specific allegations regarding

26 the value of this information." Order at 6 (citations omitted). Here, Twitter does not contest

27 Plaintiff's UCL standing; Twitter instead claims that this is a damages question (while quoting

28 the *Price* standing decision). And Plaintiff's UCL claim is not premised on the "disclosure of

personal information alone." Plaintiff alleges not only the improper use and sharing of his information, but also has added detailed allegations regarding the nature of the actual market for this information, including the need to offer something of value in order to obtain personal information for marketing purposes, (¶ 34); the value derived by marketers from such data, (¶¶ 35-36); that Plaintiff "valued his telephone number and email address and *would not have provided them without receiving value in exchange* had he known this personal information would be used for marketing purposes, rather than solely for the login verification and account recovery purposed Twitter touted" (¶ 33); and the "***use*** of their Personal Information which has value as demonstrated by its use for targeted advertising by Twitter." ¶ 140. The use of his information to economically benefit Twitter might not be unfair on its own, but the fact that Plaintiff was essentially "tricked" into providing it without Twitter's full disclosure of the ways in which it would be used is unfair and illustrates why Plaintiff otherwise would have chosen not to provide his information for two-factor authorization purposes had he known Twitter would permit third parties to utilize that information for the companies' pecuniary benefit with no monetary benefit to users. Plaintiff also alleges he was induced to provide his telephone number and email address to Twitter without payment by promises of increased security, which resulted in Plaintiff giving more than he otherwise might have and acquiring "less[ ] than [they] otherwise [c]ould have." *Kwikset*, 51 Cal. 4th at 324; *Brown*, 2021 WL 6064009, at *14–18. This is sufficient to demonstrate economic injury under the UCL. Moreover, that Plaintiff did not pay for Twitter's service is of no consequence.[6]

---

[6] *See Brown*, 2021 WL 6064009, at *17 ("[T]he California Supreme Court has stated that a plaintiff has suffered economic injury if the plaintiff 'acquire[d] in a transaction less ... than he or she otherwise would have.' *Kwikset*, 51 Cal. 4th at 324. Under this standard, a party who has provided goods or services in a transaction and has not been paid the fair value of those goods or services has suffered an economic injury even though the party has ***received*** money instead of paying money. *Id.* The same logic would apply to parties like Plaintiffs, who have provided valuable data to Google and have received ***no*** money in return.") (emphasis in original). Moreover, personal information is a property right and the breach of confidentiality of that information diminishes its value. *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 635 (N.D. Cal. 2021).

### 2.   *Plaintiff Has Properly Alleged Actual Reliance*

Twitter also mistakenly contends Plaintiff has not pled actual reliance, but he has. Actual reliance "is inferred from the misrepresentation of a material fact." *Friedman v. AARP, Inc.*, 855 F.3d 1047, 1055 (9th Cir. 2017) (citing *Chapman v. Skype, Inc.*, 220 Cal App. 4th 217 (2013)). A "misrepresentation is judged to be 'material' if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question, and as such materiality is generally a question of fact." *Id.* In the Complaint, Plaintiff alleges that "[t]he fact that Twitter used the telephone numbers provided for two-factor authentication for advertising would be material to users when deciding whether to provide a telephone number for two-factor authentication."  ¶ 45; *see also* ¶¶ 51, 57. This allegation is bolstered by the FTC's finding that Twitter's misrepresentation was material. *Price* Dkt. 29-8, ¶¶ 38, 44, 51.

In any event, Plaintiff also alleges he "provided his telephone number and email address [] to Twitter *for the purposes* of login verification and account recovery" and "would not have provided" it to Twitter through the security pathways "without receiving value in exchange had he known this personal information would be used for marketing purposes, rather than solely for the *login verification and account recovery purposes Twitter touted*." ¶¶ 7-33. This is sufficient. *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1020–21 (9th Cir. 2020) ("Plaintiffs do not provide much detail in their individual allegations, but they collectively allege that '[a]s a result of the false and fraudulent prescription requirement, each Plaintiff paid more for Prescription Pet Food than each Plaintiff would have paid in the absence of the requirement, or would never have purchased Prescription Pet Food.' This is sufficient under *Kwikset* to survive a motion to dismiss.").

Because Plaintiff has alleged a material misrepresentation, he is entitled to an inference of actual reliance sufficient to satisfy the requirements of the "unfair" and "unlawful" prongs.

### 3.   *Plaintiff Alleges Unlawful or Unfair Conduct*

Twitter maintains that the Privacy Policy disclosures defeat all of Plaintiff's claims because they reveal Twitter's data use practices, and no reasonable user could be deceived by Twitter's subsequent representations in security pathways regarding contact information—the

very conduct that triggered a civil regulatory action by the FTC and resulted in a $150 million fine. But Twitter's arguments only serve to reinforce that, at best, there are factual disputes over the sufficiency and meaning of Twitter's disclosures.

i.   Plaintiff States a Claim Under the "Unfair" Prong

"The 'unfair' prong of the UCL creates a cause of action for a business practice that is unfair even if not proscribed by some other law." *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 969 (N.D. Cal. 2016) (quoting *In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d 1197, 1225 (N.D. Cal. 2014)). In arguing that Plaintiff has not tethered his allegations to any violation of public policy, Twitter wholly ignores the allegations of the Complaint, that "[t]hrough its deceptive information collection techniques and misrepresentations, Twitter is unjustly enriching itself at the cost of consumer choice, when the consumer would otherwise have the ability to choose how they would monetize their own data." ¶ 32. Plaintiff alleges that this conduct was a violation of the FTC Act and the FTC's 2011 Order barring Twitter from making misrepresentations about the security of nonpublic consumer information. ¶ 29. Twitter cannot credibly argue that Plaintiff's "unfair" claim is not tethered to the FTC's public policy of preventing companies from deceiving consumers. Accordingly, Plaintiff has sufficiently alleged an "unfair" business practice.

In addition, the purported Privacy Policy disclosures—made **only** at account opening— have little bearing on Plaintiff's UCL claim premised on post-account opening representations. Companies cannot expressly or impliedly represent that personal information will be used for one purpose and then use it for another, even if the purported use is buried in a privacy policy. But as alleged in the Complaint (and the parallel FTC action) this is the bait-and-switch Twitter pulled on unsuspecting consumers. ¶¶ 3-7.

A UCL fraud claim is based on the "reasonable consumer" standard. *Moore*, 966 F.3d at 1017. This "requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* (quotation marks omitted). A business practice is also "unfair within the meaning of the UCL if it violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes

injury to consumers which outweighs its benefits." *Rice v. Kimberly-Clark Corp.*, 2022 WL 16804522, at *1–10 (E.D. Cal. Nov. 8, 2022). And a claim for unjust enrichment requires that defendants received an unjust benefit retained at plaintiffs' expense. *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1593 (2008).

Under any theory, consumers have a right to rely on what Twitter represents at the time it asked for user contact information. Attempting to retreat to a contradictory statement buried elsewhere does not correct a deceptive practice. Indeed, courts in this Circuit repeatedly hold that "fine print" does not dispel deception.[7]

Here, Plaintiff alleges that, from May 2013 through September 2019, Twitter prompted users to provide their telephone numbers and email addresses, through security pathways, for security purposes. ¶¶ 23-32, 37-57. Specifically, Twitter told users it would use their personal data to help with account recovery (for example, if users forgot their passwords) or to reenable full access if Twitter detected suspicious activity on a user's account.  ¶¶ 46-51, 52-57. Twitter induced users to provide their phone numbers and email addresses by claiming that the company's purpose was, for example, to "Safeguard your account."  ¶¶ 46-51. Twitter further encouraged users to provide that information because "[a]n extra layer of security helps make sure that you, and only you, can access your Twitter account." ¶ 40. Of note, ***none*** of the prompts through which Twitter requested contact information linked to the Privacy Policy or mentioned any marketing uses—a disclosure Twitter could have easily placed in the security pathways.  ¶¶ 37-57. As a

---

[7] *See Williams v. Gerber Prod. Co.*, 552 F.3d 934, 939-40 (9th Cir. 2008) ("We disagree with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box"); *Walters v. Vitamin Shoppe Industries, Inc.*, 701 F. App'x 667, 670 (9th Cir. 2017) (consumers are not "required, as a matter of law, to cross-reference [the challenged] statements . . . against information found in small print elsewhere on the product."); *Dorfman v. Nutramax Lab'ys, Inc.*, 2013 WL 5353043, at *11 (S.D. Cal. Sept. 23, 2013) ("The presence of a disclaimer on the Cosamin products does not require dismissal of the fraudulent advertising claims at this stage of the proceedings."); *Kang v. P.F. Chang's China Bistro, Inc.*, 844 F. App'x 969, 971-72 (9th Cir. 2021) ("[W]e cannot assume that reasonable consumers would necessarily look past the term 'krab mix' in the item they were ordering to notice that 'crab' appeared as an ingredient in other items on the same menu."); *see also Balser v. Hain Celestial Grp., Inc.*, 640 F. App'x 694, 696 (9th Cir. 2016).

result, over 140 million Twitter users, including Plaintiff, unwittingly provided Twitter with their telephone numbers and email addresses for these non-marketing purposes. *E.g.,* ¶ 30; *id.* ¶¶ 33-37.

Lest there be any doubt regarding Twitter's bait-and-switch, the FTC asserted that "Twitter ***deceptively*** used personal information collected for ***specific*** security-related purposes for advertising." *Price* Dkt. 29-8 ¶¶ 36, 38, 58 (emphasis added). Worse yet, Twitter publicly admitted that "When an advertiser uploaded their marketing list, we may have matched people on Twitter to their list ***based on the email or telephone number the Twitter account holder provided for safety and security*** purposes. ***This was an error*** and we apologize." *Price* Dkt. 59-4 at 1-2 (emphasis added). The language of Twitter's announcement is a concession that Twitter had not adequately disclosed its advertising practices in the security prompts, and implicitly in the Privacy Policy.

In response, Twitter relies on distinguishable case law. Mot. at 11-12. Twitter's lead citation is to *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152 (9th Cir. 2012), where the Ninth Circuit affirmed dismissal of UCL and False Advertising Law claims alleging that a bank and retailer defrauded customers by offering credit cards without adequately disclosing the annual fee. But central to the Ninth Circuit's reasoning was that the challenged advertisement contained a "legible disclaimer" stating "[o]ther restrictions may apply." *Id.* at 1162. Further, no reasonable consumer would "conclude that any credit card that offers rewards for spending must therefore not have associated costs of ownership." *Id.* And the online credit application's disclosures followed the format required by the Truth in Lending Act, which were deemed conspicuous under a safe harbor. *Id.* at 1165.

By contrast, here, the challenged security pathways through which Twitter collected user contact information contain no disclosures relating to marketing uses, and take place independent of account registration. ¶¶ 37-57. To be sure, the two-factor authentication pathway contains a "learn more" link explaining only that email addresses and telephone numbers provide an "extra layer of security"—and is silent on other uses. ¶¶ 39-40. The account recovery pathway similarly recommends adding "your phone number" or "email" to "help ensure that you can log into

Twitter." ¶¶ 46-49. Again, no mention of marketing uses. And the re-authentication pathway, couched in mandatory terms, states "[t]o unlock your account, you must do the following: verify your phone number." ¶¶ 52-57.[8] Moreover, also contrary to *Davis*, here, the pertinent federal regulator has found Twitter's conduct *did* violate federal law.

At minimum, whether Twitter's Privacy Policy disclosures are conspicuous and consistent with the representations in Twitter's data collection pathways (they are not) is a disputed question of fact. *Williams*, 552 F.3d at 939 (UCL fraud); *Rice*, 2022 WL 16804522, at *1–10 (UCL unfair).

ii.   Plaintiff States a Claim under the "Unlawful" Prong

"The unlawful prong of the UCL prohibits anything that can properly be called a business practice and that at the same time is forbidden by law." *In re Anthem*, 162 F. Supp. 3d at 989 (quotations omitted). Plaintiff alleges that "Twitter's 'unlawful' acts and practices include its violation of the 2011 Commission Order and Section 5 of the FTC Act, violation of the Privacy Shield and Frameworks, and violation of Cal. Bus. & Prof. Code § 22576." ¶ 137. Twitter attempts to refute this by arguing that Plaintiff's allegations of misrepresentation and deception do not square with Twitter's disclosure about its conduct.

"[V]irtually any state, federal or local law can serve as the predicate for an action" under the UCL unlawful prong. *Rubenstein v. Neiman Marcus Grp. LLC*, 687 F. App'x 564, 567 (9th Cir. 2017) (reversing dismissal of UCL unlawful claim based on FTC advertising guidelines). Plaintiff alleges that Twitter's unlawful acts include its violation of the 2011 Commission Order (barring Twitter from making misrepresentations about the security of nonpublic consumer information), violation of the Privacy Shield and Frameworks (Twitter "may not process personal information in a way that is incompatible with the purposes for which it has been collected or subsequently authorized by the individual"), violation of Section 5 of FTC Act, and violation of Cal. Bus. & Prof. Code § 22576. ¶¶ 17-20, 29, 59-79, 137.

---

[8] Twitter also cites *Hammerling v. Google LLC*, 2022 WL 2812188, at *5, *17 (N.D. Cal. July 18, 2022) which actually supports Plaintiff on this front. After reviewing Google's privacy policy, the *Hammerling* court "reject[ed] Google's argument and finds it plausible that Google did not adequately disclose its data collection practices." *Id.* at *6.

Twitter's Privacy Policy disclosures meaningfully bear only on the latter statutory violation, which makes actionable the express breach of a privacy policy. Cal. Bus. & Prof. Code § 22576. The remaining violations are based on deceptive and unfair conduct regarding the use of user contact information, collected after account registration through misleading security prompts, which cannot be cured by earlier fine-print disclaimers, as discussed above.

## C. Plaintiff's Breach of Implied Contract and Unjust Enrichment Claims are Proper

### 1. *Twitter Argues Against the Existence of an Express Contract*

As an initial matter, Twitter argues that the "[i]mplied contract and unjust enrichment claims cannot lie where there is a 'valid express contract' that 'cover[s] the subject matter' of those claims." Mot. at 28.[9] However, Twitter likewise argues that "Plaintiff does not point to *any* promise by Twitter not to use account holder contact information for advertising purposes," and that the statements Plaintiff has pointed to have "'no promissory language' obligating Twitter to take a particular course of action and do[ ] not guarantee anything . . . ." *Id.* at 17, 19). Accordingly, Twitter's own express contract related arguments utterly undermine its position as to the quasi-contract claims. It cannot argue that there is both (a) no contract or enforceable promise for purposes of the express contract claim, while (b) simultaneously arguing there is an express contract for purposes of seeking dismissal of the quasi-contract claims.

Indeed, this precise equivocation—which Twitter previously demonstrated in the *Price* case—is exactly why Plaintiff pleaded the implied contract and unjust enrichment claims "in the alternative." *See* ¶ 79 n.14) ("In the alternative, to the extent Plaintiff's claims fall outside sections 1.3 and 3.1, and thus are not subject to any contractual provision, a quasi-contract claim should properly lie."); *id*. at pp. 31, 33 (noting that Count II, the Implied Contract claim is "Alleged In the Alternative to Count I," and that Count IV, the Unjust Enrichment claim, is "Alleged In the Alternative to Counts 1 & 2").

---

[9] Pinpoint citations to material on the Court's docket refers the CM/ECF System's page numbering in the upper righthand corner of the documents.

1    In any event, as to the unjust enrichment claim, Plaintiff alleges that, if his contract claim

2   falls outside of Sections 1.3 and 3.1, and he has no remedy for breach of express contract, he

3   should be able to recover Twitter's profits gained by collecting and using contact information

4   under false pretenses. ¶¶ 145-150). In the Ninth Circuit, unjust enrichment is an "independent

5   cause of action" that can be pleaded in the alternative alongside a breach of contract claim.[10]

6        Moreover, the existence of an enforceable contract relating to the dispute "does not doom

7   the claim at the motion to dismiss stage" when the unjust enrichment claim does not "expressly

8   arise out of any breach of contract." *Obertman v. Electrolux Home Care Prod., Inc.*, 482 F. Supp.

9   3d 1017, 1028 (E.D. Cal. 2020). This rings true because "the theory underlying" unjust

10  enrichment is that "a defendant has been unjustly conferred a benefit though mistake, fraud,

11  coercion, or request." *Id.* at 1027-28. Again, in this case, Plaintiff's unjust enrichment claim is

12  premised on the benefits Twitter earned through its independently misleading representations in

13  security pathways—i.e., that user contact information would be used only for security-related

14  purposes.[11] ¶¶ 37-57.

15        Plaintiff's implied contract claim is also adequately alleged in the alternative for similar

16  reasons. ¶¶ 128-134. In fact, "Courts routinely allow plaintiffs to plead both implied contract and

17  express contract theories, as long as those theories are pled in the alternative." *California Spine*

18  *& Neurosurgery Inst. v. United Healthcare Ins. Co.*, 2019 WL 4450842, at *4 (N.D. Cal. Sept.

19  17, 2019); *see also SocialApps, LLC v. Zynga, Inc.*, 2012 WL 381216, at *3 (N.D. Cal. Feb. 6,

20  2012) (same).

21

22

23  [10] *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016) ("To allege unjust enrichment as an independent cause of action, a plaintiff must show that the defendant received

24  and unjustly retained a benefit at the plaintiff's expense."); *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d at 803 ("The plaintiffs also state a claim for unjust enrichment.

25  Specifically, they allege that even if they have no remedy for breach of contract, they should be able to recover amounts that Facebook gained by improperly disseminating their information. The

26  plaintiffs are permitted to plead claims for breach of contract and unjust enrichment in the alternative.").

27  [11] In other words, Plaintiff could lose on his express contract claim and nevertheless recover under an unjust enrichment theory because Twitter's misleading representations in security prompts

28  induced Plaintiff and the class members to provide personal information for a limited purpose.

Beyond that, "[w]here there is both an express and implied contract, relief is available under an implied contract if the material terms do not conflict with the express contract." *Santa Clara Waste Water Co. v. Allied World Nat'l Assurance Co.*, 18 Cal. App. 5th 881, 889 (2017). Critically, "under California law, 'even when a written contract exists, evidence derived from experience and practice can . . . trigger the incorporation of ***additional, implied terms***,' although 'implied terms should never be read to vary express terms.'"[12]

So too here. Plaintiff alleges that the express contract generally requires full disclosure of the collection and uses of personal information, which does ***not*** conflict with the implied term created through Twitter's security pathways. ¶¶ 129-133. The additional implied term requires that user personal information, collected after account opening, be used only for the specific purposes represented via the security prompts—here, two-factor authentication, account recovery, and account re-authentication, and no other purposes such as marketing or advertising.  ¶¶ 37-57, 130.

### 2.   *The Statute of Limitations Does Not Bar Plaintiff's Claims*

Next, Twitter contends that Plaintiff's breach of implied contract and unjust enrichment claims are time barred by the two-year statute of limitations for each claim. Twitter argues that the statute of limitations began to run in October 2019, because that was when Twitter publicly announced its "mistake" of surreptitiously using users' telephone numbers and email to facilitate targeted advertisements. *See* ECF No. 31-5 at 3.

Under the doctrine of fraudulent concealment, a "defendant's fraud in concealing a cause of action against him tolls the applicable statute of limitations, but only for that period during

---

[12] *In re Pepperdine Univ. Tuition & Fees COVID-19 Refund Litig.*, 2023 WL 2576766, at *4 (C.D. Cal. Mar. 7, 2023) (denying defendant's motion for summary judgment on implied contract claim because "the FRA [express contract] contains certain terms relating to students' obligation to pay tuition and fees, but is not dispositive as to Pepperdine's obligation to its students. And Pepperdine identifies no term of the FRA that would prevent a reasonable trier of fact from finding that its agreement with its students contained an implied term requiring in-person instruction.") (emphasis added); *accord Putnam v. Putnam Lovell Grp. NBF Secuirites, Inc.*, 2006 WL 1821207, at *6 (N.D. Cal. June 30, 2006) (implied contract claim may proceed under theory that it modified or superseded relevant portions of express contract).

which the claim is undiscovered by plaintiff or until such time as plaintiff, by the exercise of reasonable diligence, should have discovered it." *Bernson v. Browning-Ferris Industries of Cal., Inc.*, 7 Cal.4th 926, 931 (1994). "Like the discovery rule, the rule of fraudulent concealment is an equitable principle designed to effect substantial justice between the parties; its rationale 'is that the culpable defendant should be estopped from profiting by his own wrong to the extent that it hindered an 'otherwise diligent' plaintiff in discovering his cause of action.'" *Id.*

It "is generally inappropriate to resolve the fact-intensive allegations of fraudulent concealment at the motion to dismiss stage." *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1070 (N.D. Cal. 2021). Nevertheless, "[t]o plead fraudulent concealment, the plaintiff must allege that: (1) the defendant took affirmative acts to mislead the plaintiff; (2) the plaintiff did not have actual or constructive knowledge of the facts giving rise to its claim; and (3) the plaintiff acted diligently in trying to uncover the facts giving rise to its claim." *Id.* (internal quotation marks and citation omitted). Each of those requirements is met here.

First, Plaintiff alleged in the Complaint that Twitter affirmatively misled him and the class members by "prompt[ing] users to provide a telephone number or email address for the express purpose of securing or authenticating their Twitter accounts, while also using this information to serve targeted advertising and further its own business interests through its Tailored Audiences and Partner Audiences service." ¶ 27. "[F]rom at least May 2013 through September 2019, Twitter did not disclose, or did not disclose adequately, that it used these telephone numbers and emails addresses to target advertisements to those users through its Tailored Audiences and Partner Audiences services." *Id.* This is supported by the FTC's finding that Twitter "*misrepresented* to users of its online communications service the extent to which it maintained and protected the security and privacy of their nonpublic contact information." ECF No. 31-6 ¶ 2 (emphasis added).

Second, because Twitter failed to disclose its actions, Plaintiff did not have actual or constructive knowledge of the facts giving rise to his claim. "[T]he question of constructive knowledge and inquiry notice generally presents a question for the trier of fact." *Brown*, 525 F. Supp. 3d at 1070 (internal quotation marks and citation omitted). Due to Twitter's

misrepresentation that it was collecting telephone numbers and email addresses for security-related purposes, a reasonable user would not have had reason to suspect their information was also being used for targeted advertising purposes or to investigate how Twitter was using their information. *See id.*

Finally, "[c]ourts have been hesitant to dismiss an otherwise fraudulently concealed . . . claim for failure to sufficiently allege due diligence." *Id.* at 1071 (internal quotation marks and citation omitted). Twitter argues that Plaintiff had notice of Twitter's conduct in October 2019 when it made its announcement. Mot. at 30. But as the *Brown* court recognized, such an "argument puts the cart before the horse, however, as Plaintiffs were not obligated to investigate their claims until Plaintiffs had reason to suspect the existence of their claims." *Brown*, 525 F. Supp. 3d at 1071 (cleaned up). Because Plaintiff and class members had already provided their telephone numbers and email addresses to Twitter for security-related purposes, they would have had no reason to subsequently investigate how Twitter was actually using their information. They would have had no occasion to see Twitter's announcement through anything other than chance, nor would they have had any reason to go looking for it. Moreover, Twitter represented its actions as mere "inadverten[ce]," a "mistake," and an "error." ECF No. 31-5 at 2-3.

It was not until the FTC announced its action on May 25, 2022, and specifically detailed the deceptive nature of Twitter's actions, *see* ECF No. 31-6, that the true nature of Twitter's conduct first came to light; conduct sufficient to allege the pending claims. Plaintiff filed this action far less than two years later.

This Court should find—as in *Brown*—that Plaintiff adequately alleged that his breach of implied contract and unjust enrichment claims were tolled under the fraudulent concealment doctrine, and questions regarding fraudulent concealment should be resolved following discovery.

### 3. *Plaintiff Properly Pleads the Elements of the Claims*

Finally, Twitter argues the quasi-contract claims should be dismissed because "as with the UCL claim, Plaintiff fails to identify with specificity any alleged misrepresentation . . . ." Mot. at 31. However, as explained above in refence to the UCL claim, those arguments are incorrect. *See supra* § B(3)(i) at 14, 15.

And Plaintiff alleged, in great detail, the security flows through which his and class members' personal information was collected and during which Twitter could have and should have accurately disclosed what this information was going to be used for, (¶¶ 37-57), dispelling any possible notion of running afoul of Rule 9(b).

### D.  Leave to Amend Should be Freely Granted

Twitter's argument that the Court should deny Plaintiff leave to amend his Complaint runs directly afoul of well settled precedent from this District that "Rule 15 favors a liberal policy towards amendment" and that "[a] court should freely grant leave to amend." *Sidibe*, 2017 WL 4310711, at *2; *see also Kuhn v. L'Oreal USA S/D, Inc.*, No. 19-CV-04021-HSG, 2020 WL 1307004, at *6 (N.D. Cal. Mar. 19, 2020) (Gilliam, J.) (same). Twitter "bears the burden of demonstrating why leave to amend should not be granted," and "[c]ourts may decline to grant leave to amend **only if** there is strong evidence of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment, etc." *Id*. (emphasis added). Twitter has wholly failed to satisfy its burden of demonstrating the foregoing. Its only basis for arguing against granting Plaintiff leave to amend is a prior dismissal in another, separate lawsuit (Mot. at 23-24), but the docket in this lawsuit is clear: Plaintiff has never previously amended his Complaint, so Twitter has failed to meet its burden of overcoming the presumption of freely granting leave to amend.

## IV.   CONCLUSION

For all the foregoing reasons, Twitter's motion should be denied.

Dated: July 7, 2023                                  Respectfully submitted,

By: /s/ Sophia M. Rios

Sophia M. Rios, SBN 305801
BERGER MONTAGUE PC
401 B Street, Suite 2000
San Diego, CA 92101
Tel. (619) 489-0300
Fax  (215) 875-4604
srios@bm.net

E. Michelle Drake*
BERGER MONTAGUE PC
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413
Tel. (612) 594-5933
Fax  (612) 584-4470
emdrake@bm.net

Mark B. DeSanto*
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
mdesanto@bm.net

John A. Yanchunis*
Jean Sutton Martin*
Patrick Barthle*
MORGAN & MORGAN COMPLEX
LITIGATION GROUP
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 559-4908
Facsimile: (813) 222-4795
jyanchunis@ForThePeople.com
jeanmartin@ForThePeople.com
pbarthle@ForThePeople.com

Michael F. Ram (SBN 104805)
MORGAN & MORGAN COMPLEX
LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Facsimile: (415) 358-6923
mram@ForThePeople.com

Kate M. Baxter-Kauf, MN # 0392037*
Karen Hanson Riebel, MN # 219770*
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
kmbaxter-kauf@locklaw.com
khriebel@locklaw.com

John J. Nelson (SBN 317598)

1

2      MILBERG COLEMAN BRYSON
       PHILLIPS GROSSMAN, PLLC
3      280 S. Beverly Drive
       Beverly Hills, CA 90212
4      Telephone: (917) 471-1894
       Fax: (865) 522-0049
5      jnelson@milberg.com

6      Gary M. Klinger*
       MILBERG COLEMAN BRYSON
7      PHILLIPS GROSSMAN, PLLC
       227 W. Monroe Street, Suite 2100
8      Chicago, IL 60606
       Telephone: (866) 252-0878
9      Fax: (865) 522-0049
       gklinger@milberg.com
10

11     * *Admitted pro hac vice or forthcoming*

12     *Attorneys for Plaintiff*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28