1  LATHAM & WATKINS LLP
   Elizabeth L. Deeley (CA Bar No. 230798)
2   *elizabeth.deeley@lw.com*
   Whitney B. Weber (CA Bar No. 281160)
3   *whitney.weber@lw.com*
   505 Montgomery Street, Suite 2000
4  San Francisco, California 94111-6538
   Telephone: +1.415.391.0600
5
   Michele D. Johnson (CA Bar No. 198298)
6   *michele.johnson@lw.com*
   650 Town Center Drive, 20th Floor
7  Costa Mesa, California 92626-1925
   Telephone: +1.714.755.8113
8
   Susan E. Engel (*Pro Hac Vice*)
9   *susan.engel@lw.com*
   Margaret A. Upshaw (*Pro Hac Vice*)
10   *maggie.upshaw@lw.com*
   555 Eleventh Street, NW, Suite 1000
11  Washington, D.C. 20004-1304
   Telephone: +1.202.637.3309
12
   *Attorneys for X Corp., successor in interest to*
13  *named defendant Twitter, Inc.*

14

15                UNITED STATES DISTRICT COURT

16              NORTHERN DISTRICT OF CALIFORNIA

17                     OAKLAND DIVISION

18  HENRY YEH, individually and on behalf of        Case No. 4:23-cv-01790-HSG
    all others similarly situated,
19                                                  **DEFENDANT TWITTER, INC.'S REPLY**
                        Plaintiff,                  **IN SUPPORT OF MOTION TO DISMISS**
20                                                  **CLASS ACTION COMPLAINT**
    v.
21                                                  Hearing:   August 24, 2023
    TWITTER, INC.,                                  Time:      2:00 p.m.
22                                                  Location:  Courtroom 2 – 4th Floor
                        Defendant.                  Judge:     Hon. Haywood S. Gilliam, Jr.
23

24

25

26

27

28

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................ 1

II.   ARGUMENT ............................................................................................. 2

   A.    Plaintiff's Contract-Based Claims Fail on the Merits............................ 2

   B.    Plaintiff's UCL Claim Fails on the Merits............................................ 8

   C.    Plaintiff's Implied Contract and Unjust Enrichment Claims Fail....................... 13

   D.    Plaintiff Is Not Entitled to Leave to Amend ...................................... 15

III.  CONCLUSION........................................................................................... 15

1

**TABLE OF AUTHORITIES**

2

**CASES**

3

*AK Futures LLC v. LCF Labs Inc.*,
4
   No. 8:21-cv-02121-JVS, 2022 WL 2784409 (C.D. Cal. June 24, 2022) .................................. 8

5

*Amparan v. Plaza Home Mortg., Inc.*,
6
   678 F. Supp. 2d 961 (N.D. Cal. 2008) ................................................................................. 2

7

*Balser v. Hain Celestial Group, Inc.*,
   640 F. App'x 694 (9th Cir. 2016) ...................................................................................... 11

8

*Bass v. Facebook, Inc.*,
9
   394 F. Supp. 3d 1024 (N.D. Cal. 2019) ............................................................................ 14

10

*Brackett v. Am. Airlines Grp. Inc.*,
   No. 21-CV-02681-HSG, 2022 WL 282529 (N.D. Cal. Jan. 31, 2022) .................................. 2

11

*Brown v. Google, LLC*,
12
   525 F. Supp. 3d 1049 (N.D. Cal. 2021) ............................................................................ 15

13

*Brown v. Google, LLC*,
14
   No. 20-CV-03664-LHK, 2021 WL 6064009 (N.D. Cal. Dec. 22, 2021) .......................... 7, 9

15

*Cal. Spine and Neurosurgery Inst. v. United Healthcare Ins. Co.*,
   No. 19-CV-02417-LHK, 2019 WL 4450842 (N.D. Cal. Sept. 17, 2019) ............................ 13

16

*Coremetrics, Inc. v. Atomic Park.com, LLC*,
17
   No. C-04-0222 EMC, 2005 WL 3310093 (N.D. Cal. Dec. 7, 2005) .................................... 7

18

*Davis v. HSBC Bank Nevada, N.A.*,
19
   691 F.3d 1152 (9th Cir. 2012) ................................................................................. 11, 12, 13

20

*Day v. GEICO Cas. Co.*,
   580 F. Supp. 3d 830 (N.D. Cal. 2022) .............................................................................. 14

21

*Dean v. Kaiser Found. Health Plan, Inc.*,
22
   No. 5:22-CV-00278-MCS-KK, 2022 WL 18938253 (C.D. Cal. Nov. 22, 2022) .................... 6

23

*Elation Sys., Inc. v. Fenn Bridge LLC*,
   71 Cal. App. 5th 958 (2021) .............................................................................................. 6

24

25

*Fabozzi v. StubHub, Inc.*,
   No. C-11-4385 EMC, 2012 WL 506330 (N.D. Cal. Feb. 15, 2012) .................................. 12

26

*Hammerling v. Google LLC*,
27
   615 F. Supp. 3d 1069 (N.D. Cal. 2022) .............................................................................. 4

28

*Hazel v. Prudential Fin., Inc.*,
No. 22-CV-07465-CRB, 2023 WL 3933073 (N.D. Cal. June 9, 2023)...................................9

*In re Facebook Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ...............................................................................3, 13

*In re Google, Inc. Priv. Policy Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) ........................................................................................3

*In re iPhone Application Litig.*,
6 F. Supp. 3d 1004 (N.D. Cal. 2013) ........................................................................................9

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
No. 16-MD-02752-LHK, 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017).................................3

*Kang v. P.F. Chang's China Bistro, Inc.*,
844 F. App'x 969 (9th Cir. 2021) ...........................................................................................11

*Kwikset Corp. v. Superior Court*,
51 Cal. 4th 310 (2011) ..............................................................................................................9

*Lopez v. Apple, Inc.*,
519 F. Supp. 3d 672 (N.D. Cal. 2021) ......................................................................................3

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ....................................................................................8

*Meta Platforms, Inc. v. BrandTotal Ltd.*,
605 F. Supp. 3d 1218 (N.D. Cal. 2022) ....................................................................................6

*Moore v. Centrelake Med. Group, Inc.*,
83 Cal. App. 5th 515 (2022) .................................................................................................7, 8

*Moore v. Mars Petcare US, Inc.*,
966 F.3d 1007 (9th Cir. 2020) ..................................................................................................9

*Morizur v. Seaworld Parks & Ent., Inc.*,
No. 15-CV-02172-JSW, 2020 WL 6044043 (N.D. Cal. Oct. 13, 2020)...................................9

*Newman v. Google LLC*,
No. 20-CV-04011-LHK, 2021 WL 2633423 (N.D. Cal. June 25, 2021) ..................................3

*Obertman v. Electrolux Home Care Prod., Inc.*,
482 F. Supp. 3d 1017 (E.D. Cal. 2020)...................................................................................13

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
971 F.3d 1042 (9th Cir. 2020) ................................................................................................14

*Palantir Techs., Inc. v. Abramowitz*,
No. 19-CV-06879-BLF, 2022 WL 2952578 (N.D. Cal. July 26, 2022)....................................6

*Price v. Twitter, Inc.*,
    No. 22-CV-03173-SK (N.D. Cal. Dec. 6, 2022)................................................................. 5, 15

*Pruchnicki v. Envision Healthcare Corp.*,
    845 F. App'x 613 (9th Cir. 2021) ........................................................................................ 8

*Reveal Chat Holdco, LLC v. Facebook, Inc.*,
    471 F. Supp. 3d 981 (N.D. Cal. 2020) .............................................................................. 14

*Rutter v. Apple Inc.*,
    No. 21-CV-04077-HSG, 2022 WL 1443336 (N.D. Cal. May 6, 2022).................................. 2

*Schmitt v. SN Servicing Corp.*,
    No. 21-CV-03355-WHO, 2021 WL 3493754 (N.D. Cal. Aug. 9, 2021) .............................. 13

*Tradeshift, Inc. v. BuyerQuest, Inc.*,
    No. 20-cv-01294-RS, 2021 WL 4306011 (N.D. Cal. 2021)................................................. 7

*Walker v. Am. Natl. Ins. Co.*,
    No. 16-CV-06255-HSG, 2018 WL 1993383 (N.D. Cal. Apr. 27, 2018).............................. 6

*Wesch v. Yodlee, Inc.*,
    No. 20-CV-05991-SK, 2021 WL 1399291 (N.D. Cal. Feb. 16, 2021).................................. 9

*Williams v. Apple, Inc.*,
    449 F. Supp. 3d 892 (N.D. Cal. 2020) ................................................................................ 9

*Williams v. Bank of Am.*,
    No. 1:21-cv-00848-AWI-HBK, 2022 WL 3141863 (E.D. Cal. Aug. 5, 2022), *report and
    recommendation adopted*, 1:21-cv-00848-AWI-HBK, 2022 WL 9460753 (E.D. Cal. Oct. 14,
    2022) (*appeal docketed*, No. 22-16782 (9th Cir. Nov. 17, 2022)) .......................................... 6

*Williams v. Gerber Products Co.*,
    552 F.3d 934 (9th Cir. 2008) ............................................................................................. 11

*Williamson v. Reinalt-Thomas Corp.*,
    No. 5:11-CV-03548-LHK, 2012 WL 1438812 (N.D. Cal. Apr. 25, 2012) ........................... 12

**STATUTES**

Cal. Bus. & Prof. Code § 22576 ...................................................................................... 10

Cal. Civ. Code § 1549 ......................................................................................................... 2

**RULES**

Fed. R. Civ. P. 12(b)(6).......................................................................................................... 8

Fed. R. Civ. P. 9(b) ................................................................................................. 8, 14, 15

# I.      INTRODUCTION

Plaintiff's opposition fails to meaningfully address any of the many deficiencies in his Complaint. Twitter[1] disclosed in its Privacy Policy that it used basic account holder contact information to provide more relevant advertising, and Plaintiff's effort to ignore those disclosures does not state a viable legal claim.

At the outset, Plaintiff's request that the Court ignore Twitter's Privacy Policy makes no sense. Plaintiff claims on the first page of his opposition that the Privacy Policy is an "extraneous" document that Twitter is improperly attempting to introduce at the pleading stage. Opp. at 1. That is misleading. Twitter attached a clearer, but substantively identical, version of the Privacy Policy that ***Plaintiff*** had already attached to his own Complaint. *See* Dkt. 1-1 (Ex. 1 to Complaint). And it is ***Plaintiff*** who alleges a breach of that Policy. The crux of Plaintiff's allegations is that the Privacy Policy supposedly promised account holders that Twitter would not use their information for advertising. But the Privacy Policy says the exact opposite—that Twitter may use basic contact information for both advertising and security purposes. Plaintiff's suggestion that the Privacy Policy somehow falls outside the Complaint—rather than at its core—is wrong. The Privacy Policy makes clear that each of Plaintiff's claims fails as a matter of law:

*First*, Plaintiff identifies no contractual promise that Twitter breached, and no cognizable damages for purposes of his express and implied contract claims. *Second*, Plaintiff fails to plead an economic injury as required for his Unfair Competition Law ("UCL") claim, because he does not adequately allege he was entitled to payment for his contact information or that his information actually *lost* value *to him* (as opposed to arguing it was valuable to Twitter). Nor does he adequately allege actual reliance on any representation or omission, and he still fails to identify any unlawful or unfair conduct to support his UCL claim given Twitter's express and repeated disclosures that it was entitled to use account holder information for advertising—the very conduct about which Plaintiff complains. *Third*, Plaintiff's unjust enrichment and implied contract claims are foreclosed by the parties' express contract, barred by the statute of limitations, and meritless.

---

[1] This brief is filed on behalf of X Corp., as successor in interest to named defendant Twitter, Inc. Twitter, the online social media platform, has been re-branded as "X." This motion continues to refer to "Twitter" throughout for ease of understanding.

1   Plaintiff's Complaint should be dismissed with prejudice and without leave to amend.

2   Plaintiff *already* filed a federal complaint based on the same core conduct alleged in the current

3   Complaint, *see Gianakopoulos v. Twitter, Inc.*, No. 22-CV-04674, Dkt. 1 (N.D. Cal. Aug. 15,

4   2022), and his choice to abandon that action and instead file a new complaint in state court should

5   not afford him a third bite at the apple.  After two tries, it is clear that amendment would be futile.

6   **II.   ARGUMENT**

7       **A.   Plaintiff's Contract-Based Claims Fail on the Merits**

8       **No Breach.**  Plaintiff's opposition confirms he cannot plausibly allege a breach of any

9   provision in Twitter's Privacy Policy.

10      As an initial matter, Plaintiff contends that Twitter improperly challenges his contract claim

11  based on "other language buried in a privacy policy it attaches to its Motion," raising "premature

12  questions of fact."  Opp. at 1; *see also id.* at 3, 5.  But the Privacy Policy attached to Twitter's

13  papers is **the contract** Plaintiff relies on for his breach of contract claim, Compl. ¶¶ 112-123; it

14  was also attached to Plaintiff's Complaint; and as Twitter explained, even *aside* from the

15  conspicuous disclosures it contains, Plaintiff cannot allege a breach of any of the provisions he

16  identifies, as he must in order to state his claim.  Mot. at 8-10.[2]  Courts routinely dismiss at the

17  motion to dismiss stage where, as here, a plaintiff fails to identify a contractual promise not to

18  engage in the alleged conduct.  *Id.* at 8.[3]  The Privacy Policy's prominent disclosures only ***confirm***

19  how misplaced Plaintiff's allegations of breach are, and the disclosures are also appropriately

20  considered in assessing Plaintiff's claim.  *See, e.g.*, *Amparan v. Plaza Home Mortg., Inc.*, 678 F.

21  Supp. 2d 961, 977 (N.D. Cal. 2008) (dismissing contract claim where allegations of breach were

---

[2] As Twitter explained, Twitter attached a substantively identical version of the Privacy Policy only because the Complaint version did not include the section headers, which Plaintiff relied on in identifying the particular provisions of the Privacy Policy.  Dkt. 32 at 2 n.2; Dkt. 31-3 ("Privacy Policy"); *see, e.g.*, Compl. ¶¶ 74, 75. Although Plaintiff complains that Twitter attaches "nine exhibits," Opp. at 1, he does not actually oppose Twitter's request for judicial notice and incorporation by reference.  *See* Dkt. 32.

[3] *See also, e.g.*, *Rutter v. Apple Inc.*, No. 21-CV-04077-HSG, 2022 WL 1443336, at *7 (N.D. Cal. May 6, 2022) (dismissing contract claim where Apple allegedly failed "to explain" how users could manage their data but plaintiffs did not "identify a provision" in the terms "that promises users any form of data storage advice"); *Brackett v. Am. Airlines Grp. Inc.*, No. 21-CV-02681-HSG, 2022 WL 282529, at *3 (N.D. Cal. Jan. 31, 2022) ("California law makes clear" that "'[a] contract is an agreement to do or not to do a specific thing.'" (quoting Cal. Civ. Code § 1549)).

"contradicted by the terms of the" agreement); *see also Newman v. Google LLC*, No. 20-CV-04011-LHK, 2021 WL 2633423, at *15 (N.D. Cal. June 25, 2021) ("Plaintiffs may not bring multiple claims on the basis of the parties' contracts . . . , but then object to Defendants' reliance on those same contracts in the motion to dismiss.").

Aside from Plaintiff's efforts to distract the Court, his arguments suffer from the same fundamental deficiencies Twitter already identified. Plaintiff continues to rely on the preamble of the Privacy Policy, which says "[w]e give you control *through your settings* to limit the data we collect from you and how we use it." Compl. ¶ 114 (emphasis added); Opp. at 4. But Plaintiff ignores those settings, which expressly permit account holders to opt out of interest-based advertising, and includes no allegation that he *did* opt out or that Twitter failed to respect his settings. Privacy Policy at 8-9 (Section 2.6); *id.* at 10 (Section 2.10). Nor does Plaintiff otherwise identify any facts showing a lack of control. Plaintiff also continues to rely on the preamble's statement, "We believe you should always know what data we collect from you and how we use it . . . ." *Id.* at 1. But as Twitter explained, that statement lacks any promissory language, Mot. at 10, and Plaintiff's cases do not demonstrate otherwise. For example, Plaintiff cites *Lopez v. Apple, Inc.*, Opp. at 6-7, but none of the statements at issue in that case were prefaced with phrases like "we believe"—aspirational language that does not create an obligation to take a particular course of action. *See* 519 F. Supp. 3d 672, 691 (N.D. Cal. 2021).[4]

Plaintiff also takes issue with a statement in Section 3.1 stating that Twitter will not "share or disclose" account holder data without consent. But Plaintiff concedes he is not alleging any dissemination or disclosure of contact information to advertisers. Opp. at 6. Rather, Plaintiff argues that by "aiding advertisers in reaching their preferred audiences," Twitter "effectively" shared account holder information with advertisers. *Id.* Plaintiff's new theory appears nowhere in the Complaint and is at odds with his own allegations. Although Plaintiff cites paragraphs 5,

---

[4] *See also* Opp. at 7 (citing *In re Facebook Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 801 (N.D. Cal. 2019) (promising users they "can control how [their information] is shared"); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2017 WL 3727318, at *44 (N.D. Cal. Aug. 30, 2017) (promising users defendants "apply safeguards" to protect their information); *In re Google, Inc. Priv. Policy Litig.*, 58 F. Supp. 3d 968, 986 (N.D. Cal. 2014) (promising users that information shared with third parties "will not identify [them] personally")).

26, and 29 as purportedly alleging that Twitter "shared" contact information, Opp. at 6, those allegations in fact acknowledge that Twitter was only "***using***" account holder email addresses and phone numbers by *matching* that information internally against information that was separately provided by advertisers.  Compl. ¶ 5 (emphasis added); *see also* Compl. ¶¶ 26, 29.  Plaintiff also makes much of the presence of both "share" and "disclose" in Section 3.1 to argue that sharing must mean something other than disclosure, Opp. at 6, but there is no reasonable interpretation of the term "share" that would capture Twitter's conduct here—and Plaintiff does not offer one.  Twitter's internal *use* of account holder information to make advertising more relevant constitutes neither sharing nor disclosure of that information.  Plaintiff does not (and cannot) allege that advertisers were ever in possession of the account holder data that Twitter collected (*i.e.*, that Twitter "shared" it), or even that advertisers were temporarily granted access to that data (*i.e.*, that Twitter "disclosed" it).  Plaintiff's allegations thus fall far short of establishing any breach.

Without a provision breached, Plaintiff is left to argue that the Privacy Policy— specifically, Section 1.3—did "not definitively notify users that their contact information may be used for marketing and advertising purposes irrespective of the context in which  information was collected." Opp. at 4.  That is irrelevant to his contract claim, which requires a provision breached rather than the absence of a promise.  Mot. at 8 (citing *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1095 (N.D. Cal. 2022)).  But regardless, Plaintiff is wrong in saying that Section 1.3 describes only "contact information collected during the account registration process."  Opp. at 5.  That argument is inconsistent with the structure of the Privacy Policy and the plain language of Section 1.3.

The Privacy Policy governs the ongoing, interactive relationship account holders have with Twitter and informs account holders about how Twitter uses the data they associate with their accounts at various points in time, both during and after account creation.  *See, e.g.*, Privacy Policy at 2 (indicating that Section 1 addresses information that account holders are "require[d]" to share with Twitter and information they can "choose to share" with Twitter); *id.* at 13 (providing methods to "correct, delete, or modify the personal data you provided to us and associated with your account"); *id.* at 17 (explaining that Twitter may provide Privacy Policy updates through the

1    "email address associated with your account").   Accordingly, while Section 1.1 addresses

2    "personal data" required to create an account, subsequent subsections, including Section 1.3,

3    address information that account holders may share with Twitter throughout their use of its

4    services, including tweets and retweets; contact information; direct messages; and payment

5    information, *see id.* at 3-5.  Contrary to Plaintiff's argument, each of those subsections plainly

6    includes information beyond account creation data.  And that is confirmed by the language of

7    Section 1.3 itself—which includes no reference to account creation data and in fact, makes clear

8    it concerns information provided at any time.  Section 1.3 states that Twitter "use[s] your contact

9    information, such as your email address or phone number to … keep [your account] secure … and

10   to market to you," and it then goes on to discuss login verification, syncing address books,

11   Periscope accounts, and emails from account holders to Twitter—the types of interactions that

12   occur *throughout* an account holder's ongoing use of Twitter's services.  *Id.* at 4.

13          Moreover, beyond Section 1.3, the Privacy Policy repeatedly disclosed that Twitter uses

14   contact information for both security and advertising.  Mot. at 8-9 (collecting disclosures).  And

15   again, those disclosures go beyond account creation data.  In the preamble, for example, Twitter

16   explains that, "[w]hen you *use* Twitter"—which is *after* account creation—Twitter receives

17   personal information, which it uses for "keeping your account secure and showing you more

18   relevant . . . ads."  Privacy Policy at 1 (emphasis added); *see also* Dkt. 31-2 ("Terms") (stating that

19   Privacy Policy governs "collection and use" of "the information you provide to us *when you use*

20   our Services," without limitation (emphasis added)).  And Section 2.6, related to "Advertisers,"

21   likewise explains that Twitter uses "the information described in this Privacy Policy to help make

22   our advertising more relevant to you," without limiting that information to account creation

23   information.  Privacy Policy at 8.

24          Plaintiff's attempt to avoid the plain language of the parties' contract is thus meritless, and

25   Plaintiff fails to identify any contractual provision breached.  Rather, as Magistrate Judge Kim

26   recognized, the Privacy Policy expressly discloses that Twitter would use Plaintiff's email address

27   and phone number "to show Plaintiff more relevant advertisements."  *Price v. Twitter, Inc.*, No.

28   22-CV-03173-SK, Dkt. 50 at 9 (N.D. Cal. Dec. 6, 2022).

1    **No Cognizable Damages.**  Both of Plaintiff's contract-based claims (implied and express)

2    should also be dismissed because Plaintiff fails to allege any cognizable damages resulting from

3    Twitter's conduct.  Mot. at 10-11; *see also* Opp. at 4 (acknowledging "resulting damage" element).

4          Plaintiff first relies on his purported entitlement to nominal damages to support his contract

5    claims, but the cases he cites for this proposition, Opp. at 7-8, do not displace the longstanding

6    rule that plaintiffs must ***plead*** "resulting damage" to state a breach of contract claim.  *See* Mot. at

7    10-11; *see also Walker v. Am. Natl. Ins. Co.*, No. 16-CV-06255-HSG, 2018 WL 1993383, at *6

8    (N.D. Cal. Apr. 27, 2018) (explaining that a contract claim does not accrue until a plaintiff can

9    show all elements, including "appreciable harm beyond mere nominal damages" (citation

10   omitted)).  Rather, they are post-pleading-stage cases that acknowledge that an award of nominal

11   damages may be available where plaintiffs are ultimately unable to prove their alleged damages

12   with sufficient certainty.  *See, e.g.*, *Elation Sys., Inc. v. Fenn Bridge LLC*, 71 Cal. App. 5th 958,

13   965 (2021) (holding that nominal damages were appropriate following jury trial).[5]  But district

14   courts applying California law continue to recognize the bedrock principle that actual damages are

15   required to state a breach of contract claim.  *See, e.g.*, *Dean v. Kaiser Found. Health Plan, Inc.*,

16   No. 5:22-CV-00278-MCS-KK, 2022 WL 18938253, at *10 (C.D. Cal. Nov. 22, 2022); *Williams*

17   *v. Bank of Am.*, No. 1:21-cv-00848-AWI-HBK, 2022 WL 3141863, at *4 (E.D. Cal. Aug. 5, 2022),

18   *report and recommendation adopted*, 1:21-cv-00848-AWI-HBK, 2022 WL 9460753 (E.D. Cal.

19   Oct. 14, 2022) (*appeal docketed*, No. 22-16782 (9th Cir. Nov. 17, 2022)).

20         Plaintiff's theories of actual harm—lost benefit of the bargain and lost value of his contact

21   information—fare no better.  As an initial matter, they are barred by the limitation of liability

22   provision in Twitter's Terms of Service.  Mot. at 11.  Plaintiff argues that whether the provision

23   applies to his alleged benefit-of-the-bargain and diminution-in-value damages is a "question of

24   fact."   Opp. at 8.   But on their face, Plaintiff's alleged injuries are the type of indirect,

25

---

26   [5] *See also Palantir Techs., Inc. v. Abramowitz*, No. 19-CV-06879-BLF, 2022 WL 2952578, at *3
(N.D. Cal. July 26, 2022) (denying summary judgment on contract claim because of factual dispute

27   on actual damages, while noting that "nominal damages are available as a matter of law" where a
contract has been breached); *Meta Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp. 3d 1218, 1258

28   (N.D. Cal. 2022) (stating, at summary judgment, that nominal damages "can support entry of
judgment" on a contract claim).

1    consequential, and intangible damages the limitation of liability squarely forecloses. *See* Terms

2    at 9. *Tradeshift, Inc. v. BuyerQuest, Inc.*, No. 20-cv-01294-RS, 2021 WL 4306011, at *8 (N.D.

3    Cal. 2021), does not show otherwise—there, the court concluded that lost profits and breach of

4    confidentiality could qualify as special or general damages depending on factual development at

5    trial. But here, Plaintiff does not explain what "question of fact," Opp. at 8, could render, *e.g.*, the

6    purported downstream diminution in value of his information a *direct* consequence of any breach.

7         In any event, both theories of injury are inadequately pled, and Plaintiff cites only ***two*** cases

8    in support of them—both of which underscore the deficiencies in his allegations. As to benefit of

9    the bargain, Plaintiff claims he received "less than what [he] bargained for" and "was induced to

10   provide" his information "without payment." Opp. at 9, 11.[6] As Twitter explained, that theory

11   rests on a bargain never made between the parties, because Plaintiff alleges no basis for any

12   reasonable expectation of receiving compensation for his information. Mot. at 12; *Coremetrics,*

13   *Inc. v. Atomic Park.com, LLC*, No. C-04-0222 EMC, 2005 WL 3310093, at *7 (N.D. Cal. Dec. 7,

14   2005) ("The basic premise of contract law is to effectuate the expectations of the parties to the

15   agreement, to give them the 'benefit of the bargain' they struck when they entered into the

16   agreement." (citation omitted)). By contrast, in *Brown v. Google, LLC*, No. 20-CV-03664-LHK,

17   2021 WL 6064009, at *17 (N.D. Cal. Dec. 22, 2021), plaintiffs specifically alleged that Google

18   had previously "paid individuals for browsing histories," making it plausible that they could have

19   received payment for their data. *Id.* at *15. Plaintiff makes no similar allegation that Twitter has

20   ever ***paid*** account holders for basic contact information. Indeed, Twitter ***requires*** that information

21   to create an account, and Plaintiff concedes that account-creation information may be used for

22   advertising. Plaintiff also cites *Moore v. Centrelake Med. Group, Inc.*, 83 Cal. App. 5th 515, 539

23   (2022), but *Moore* accepted a benefit-of-the-bargain theory because plaintiffs had relied on certain

24   promises in accepting "pricing terms, ***paying more*** than they would have had they known the

25

26   ───────────────

     [6] Plaintiff's robust defense of his injury allegations confirms that, notwithstanding his refusal to
     take a position in his remand motion, Plaintiff's position is that he *has* suffered a cognizable injury

27   for purposes of his state-law claims. This confirms that arguments about Plaintiff's injury go to
     core merits issues—including the nature of the parties' bargain—and this Court has jurisdiction to

28   resolve them, such that dismissal for lack of jurisdiction, as opposed to failure to state a claim,
     would be improper. *See* Twitter Opp. to Mot. to Remand at 7-9, Dkt. 36.

truth." *Id.* at 527 (emphasis added).  Again, that is not the case here, where Plaintiffs did not pay anything for Twitter's free services.  *See* Mot. at 11-12.

Plaintiff's defense of his diminution-in-value theory is equally flawed.  Plaintiff continues to rely primarily on "the value derived ***by marketers*** from such data," rather than any loss of value ***to Plaintiff*** from Twitter's use of the information.  Opp. at 11 (emphasis added); *id.* at 9.  But as Twitter explained, Plaintiff was required to—and did not—plead that the information lost value to him personally.  Mot. at 13.  And *Moore*, which Plaintiff cites, expressly ***rejected*** such a theory precisely because plaintiffs failed to allege that "any prospective purchaser" of their information would "refuse to enter into a transaction" or "insist on less favorable terms."  83 Cal. App. at 538.  The same is true here: Plaintiff cites allegations showing that some consultants recommend offering perks in exchange for consumers' contact information, *see* Opp. at 8-9, but Plaintiff does not allege he was deprived of the opportunity to obtain such perks as a result of Twitter's use of his contact information, or even that Plaintiff "ever attempted or intended to participate" in any such market.  *Moore*, 83 Cal. App. 5th at 538.  To the contrary, he argues only that he "***could*** sell his phone number and email address."  Opp. at 10 (emphasis added).  That does not suffice.  *See* Mot. at 13; *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1029 (N.D. Cal. 2012); *Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 614-15 (9th Cir. 2021).

### B.      Plaintiff's UCL Claim Fails on the Merits

Plaintiff's UCL claim should likewise be dismissed.  Contrary to Plaintiff's assertion, Opp. at 10, Twitter *does* contest Plaintiff's UCL statutory standing (a Rule 12(b)(6) issue) based on his failure to allege economic injury or actual reliance.  Mot. at 14-15.  And, because his claim (under both the unlawful and unfair prongs) is based on alleged misrepresentations, it is subject to Rule 9(b)'s heightened pleading standards.  Mot. at 14-15.[7]  Plaintiff does not contest the applicability of Rule 9(b), and Plaintiff's UCL claim cannot survive under that, or any other, standard.

**No Lost Money or Property**.  Plaintiff fails to adequately allege lost money or property.

---

[7] Plaintiff defends a purported "UCL fraud" claim, Opp. at 13, 16, but the Complaint does not allege any claim under the "fraud" prong, Compl. ¶¶ 135-43, and Plaintiff may not add such a claim now.  *See AK Futures LLC v. LCF Labs Inc.*, No. 8:21-cv-02121-JVS, 2022 WL 2784409, at *5 (C.D. Cal. June 24, 2022) ("A party may not amend its pleadings in briefs.").

Plaintiff repeats the same injury theories—lost benefit of the bargain and diminution in value—but Plaintiff cites only *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323-24 (2011), and *Brown*, both of which are readily distinguishable.  *Kwikset* found economic injury because the plaintiff consumers had "paid more" than they otherwise would have, 51 Cal. 4th at 329, and as explained above, *Brown* involved specific allegations that the defendant had previously paid users for their browsing histories.  *Supra* Section A.  Plaintiff alleges nothing of the sort.  And Plaintiff ignores the fact that courts routinely reject benefit-of-the-bargain theories for UCL claims where, as here, plaintiffs have not paid any money or established the basis for their claimed bargain, *Wesch v. Yodlee, Inc.*, No. 20-CV-05991-SK, 2021 WL 1399291, at *6 (N.D. Cal. Feb. 16, 2021) (rejecting benefit-of-the-bargain theory where plaintiffs did not allege they "paid" defendant "any money for use of its service"), and diminution-in-value theories where, as here, plaintiffs fail to allege the information *lost* value *to them*, *see* Mot. at 13; *Hazel v. Prudential Fin., Inc.*, No. 22-CV-07465-CRB, 2023 WL 3933073, at *6 (N.D. Cal. June 9, 2023).

**No Actual Reliance.**  Plaintiff concedes he must allege "actual reliance" to state his UCL claim.  Opp. at 12.  Yet Plaintiff ignores that he fails to allege "[he] actually read the challenged representations."  *Williams v. Apple, Inc.*, 449 F. Supp. 3d 892, 913 (N.D. Cal. 2020) (citation omitted); Mot. at 15.  Plaintiff instead argues his reliance can be inferred from the materiality of the alleged misrepresentation, but "an inference of reliance cannot arise for misrepresentations Plaintiff[] did not see."  *In re iPhone Application Litig.*, 6 F. Supp. 3d 1004, 1026 (N.D. Cal. 2013); *see also Morizur v. Seaworld Parks & Ent., Inc.*, No. 15-CV-02172-JSW, 2020 WL 6044043, at *16 (N.D. Cal. Oct. 13, 2020).  Plaintiff also contends his allegation that he "would not have provided" his information to Twitter had he "known" it "would be used for marketing" establishes reliance.  Opp. at 12; *see, e.g.*, Compl.  ¶ 10.  But again, this ignores that the information was already disclosed in the Privacy Policy.  Plaintiff does not allege that he even read the Policy and still does not point to any language that contradicted the Policy.  Plaintiff's citation (at 12) to *Moore v. Mars Petcare US, Inc.*, is therefore beside the point—there, plaintiffs alleged they paid more for a product "[a]s a result of" the defendant's affirmative misrepresentations.  966 F.3d 1007, 1020-21 (9th Cir. 2020).

**No Unlawful or Unfair Conduct.**  In any event, in addition to failing to allege statutory standing to bring his UCL claim, Plaintiff fails to allege unlawful or unfair conduct.  Both prongs are premised on Twitter's purported misrepresentation of its collection and use of specific contact information, and they both fail because Plaintiff fails to allege any such misrepresentation.[8]  Plaintiff identifies language in various security prompts, but he does not allege that he saw that language or specify when he saw it.[9]  And regardless, none of the language Plaintiff identifies represents that account holder information is collected "solely" for a particular use.  *See* Compl. ¶ 10.  To the contrary, the two-factor authentication flows use broad language requesting account holders to "associate" their contact information with their Twitter accounts—language echoed in Twitter's Privacy Policy.  Compl. ¶ 41; Privacy Policy at 13 (providing methods to "correct, delete, or modify the personal data you provided to us and ***associated*** with your account" (emphasis added)); *id.* at 17 (stating that Twitter may use the "email address ***associated*** with your account" to send Privacy Policy updates (emphasis added)).  Plaintiff thus resorts to arguing that Twitter's public announcement amounts to a "concession that [it] had not adequately disclosed its advertising practices in the security prompts."  Opp. at 15.  But whether or not Twitter *intended* to use contact information collected through security flows for advertising has no bearing on whether its security flows ***affirmatively represented*** that it would not do so.  Twitter should not be penalized for attempting to go above and beyond its contractual commitments or for its transparency with account holders.

Beyond his failure to identify any affirmative misrepresentation in the security flows, Plaintiff's UCL claim fails because the Privacy Policy expressly disclosed the exact conduct

---

[8] Plaintiff briefly suggests that different conduct underlies each of the predicate violations for his "unlawful" UCL claim, Opp. at 17, but the Complaint makes clear that Twitter's purported misrepresentation of how it used information underlies each predicate violation, as well as Plaintiff's "unfair" claim.  Compl. ¶¶ 64-66 (alleging violation of Privacy Shield and FTC Act because "Twitter deceptively used personal information collected for specific security-related purposes for advertising"); ¶¶ 71-79 (alleging violation of Cal. Bus. & Prof. Code § 22576 based on same conduct); ¶ 137 (identifying alleged predicate violations); ¶ 139 (alleging that Twitter's representations regarding collection and use of information were "'unfair' acts and practices").

[9] Plaintiff also refers to the re-authentication pathway, Opp. at 16, but he does not allege he provided any information through that pathway and it thus provides no basis for his claims.  Compl. ¶ 9 (alleging only use of login verification and account recovery).

Plaintiff claims was misrepresented.  Mot. at 16-17.  Plaintiff argues that those disclosures have no bearing on his claims because they were "buried" in "fine print" and were "made **only** at account opening."  Opp. at 13-14, 17.  But those assertions are not supported by any facts in the Complaint, and they are contradicted by the Privacy Policy itself.  The disclosures are written in easy-to-understand language, in normal-size font, within small, digestible paragraphs in a Privacy Policy that account holders, including Plaintiff, were required to agree to in order to use Twitter's services and that could be reviewed at any time.  *See* Terms at 2 ("You understand that through your use of the Services you consent to the collection and use (as set forth in the Privacy Policy)" of "the information you provide to us when you use our Services."); Privacy Policy at 17 (explaining that the Privacy Policy "will always be at https://twitter.com/privacy").  Indeed, the core message the disclosures seek to communicate—that Twitter uses account holder information for advertising—is repeated **multiple** times in the Privacy Policy, including in its preamble.  *Supra* Section A.

Plaintiff nevertheless contends that "consumers have a right to rely on what Twitter represents **at the time** it asked for user contact information" and that Twitter may not "retreat to a contradictory statement."  Opp. at 14 (emphasis added).  That argument is flawed. The Privacy Policy disclosures are not a "contradictory statement"; they are entirely consistent with the security flows, which did not represent that contact information would be used *solely* for security purposes and instead requested account holders to associate their contact information with their accounts.  By contrast, Plaintiff's cases involve affirmative misrepresentations that conflicted with fine-print disclosures on product labels, not circumstances in which plaintiffs concededly agreed to contractual terms with prominent and easy-to-read language.  Opp. at 14 n.7.[10]

Indeed, under Plaintiff's far-reaching argument, companies would have to repeat the terms of their contractual relationships in any subsequent interaction with a consumer.  Plaintiff identifies no case imposing such an expansive requirement.  And, contrary to Plaintiff's assertion, the Ninth Circuit's decision in *Davis v. HSBC Bank Nevada, N.A.*, makes clear that a statement is not

---

[10] *See, e.g.*, *Williams v. Gerber Products Co.*, 552 F.3d 934, 939 (9th Cir. 2008) (product label affirmatively misrepresented that product was made with "fruit juice and other all natural ingredients"); *Kang v. P.F. Chang's China Bistro, Inc.*, 844 F. App'x 969, 971 (9th Cir. 2021) (similar); *Balser v. Hain Celestial Group, Inc.*, 640 F. App'x 694, 695 (9th Cir. 2016) (similar).

rendered misleading simply because it omits information that is communicated to consumers in a contractual agreement.  *See* 691 F.3d 1152, 1170 (9th Cir. 2012) (advertisement's failure to disclose annual credit card fee did not support plaintiff's misrepresentation theory where binding terms "clearly disclosed the annual fee"); *see also, e.g.*, *Williamson v. Reinalt-Thomas Corp.*, No. 5:11-CV-03548-LHK, 2012 WL 1438812, at *10 (N.D. Cal. Apr. 25, 2012) (estimate for tire replacement that did not specifically identify tire disposal fees was not misleading where separate "receipt itself clearly disclose[d] the tire disposal fee"); *Fabozzi v. StubHub, Inc.*, No. C-11-4385 EMC, 2012 WL 506330, at *6, *8 (N.D. Cal. Feb. 15, 2012) (rejecting failure to disclose claim where defendant "effectively disclose[d]" on its website the information plaintiff alleged it concealed on its tickets).  To be sure, *Davis* noted that the challenged advertisement stated that "other restrictions may apply," 691 F.3d at 1169, but that fact does not distinguish *Davis*.  Just as that language in *Davis* was sufficient to "motivate[] a reasonable consumer to consult the terms and conditions," *id.*, here, too, Plaintiff was on ample notice that his use of Twitter's services was subject to separate terms—namely, the clear disclosures that he ***had already agreed to*** in creating an account.  Plaintiff does not even allege that he read the Terms or the Privacy Policy, which likewise precludes him from showing any "reasonable consumer" would have been misled.  *Id.* at 1170-71 (plaintiff's failure to read terms and conditions was unreasonable and precluded a showing that credit card advertising was "fraudulent" or "unfair").[11]

Finally, Plaintiff does not respond to, and therefore concedes, that his unfair UCL claim fails the "balancing test."  Mot. at 28; Opp. at 13-16.  As for the "tethering test," Plaintiff argues his claim is "tethered to the FTC's public policy of preventing companies from deceiving consumers."  Opp. at 13.  However, as Twitter previously explained, merely pointing to vague and conclusory allegations concerning purported violations of statutes and regulations—which is all

---

[11] Plaintiff also claims that *Davis* is distinguishable because there, certain disclosures complied with the Truth in Lending Act, whereas "the pertinent federal regulator has found Twitter's conduct *did* violate federal law."  Opp. 15-16.  That argument—and Plaintiff's various references to the FTC's purported "findings" and imposition of a "fine," Opp. at 12-13—are inaccurate.  The "findings" Plaintiff references are untested and unproven ***allegations***, and the "fine" was a settlement not conditioned on any finding of injury, liability, or wrongdoing.  *See* Mot. at 14.  In any event, *Davis* found the Truth in Lending Act irrelevant to its analysis of the UCL claims directed to the advertisements (which did not disclose an annual fee).  *See* 691 F.3d at 1167-68.

1   Plaintiff does—is insufficient.  *See Schmitt v. SN Servicing Corp.*, No. 21-CV-03355-WHO, 2021

2   WL 3493754, at *10-11 (N.D. Cal. Aug. 9, 2021).  And here, Plaintiff's "alleged harm was

3   reasonably avoidable," simply by reading the Privacy Policy.  *See Davis*, 691 F.3d at 1171.

### C.   Plaintiff's Implied Contract and Unjust Enrichment Claims Fail

5   **Express Contract.**  Plaintiff's implied contract and unjust enrichment claims are both

6   foreclosed by the existence of an express contract.  Plaintiff misleadingly claims that Twitter

7   argues against the "[e]xistence of an [e]xpress [c]ontract."  Opp. at 17 (capitalization omitted).

8   But that misrepresents Twitter's argument.  Twitter has never taken the position that there is ***no***

9   ***contract*** between the parties or that its own Terms and Privacy Policy are unenforceable (and

10  neither has Plaintiff).  The fact that Plaintiff cannot identify a ***breach*** of that contract does not

11  allow him to ignore it.  Both Plaintiff and Twitter ***agree*** that a valid contract exists, and that

12  contract bars Plaintiff's quasi-contract claims.  Mot. at 19-20.[12]

13  Plaintiff resorts to arguing that his unjust enrichment claim does not arise out of or conflict

14  with the Privacy Policy, and that additional, implied terms can be incorporated into an express

15  contract so long as they do not conflict with that contract.  Opp. at 18-19.  But both claims turn on

16  Twitter's "collection and use" of account holder information—which is squarely governed by the

17  parties' express contract.  Terms at 2; Mot. at 19-20; Compl. ¶¶ 129-30, 145.  And the "term"

18  Plaintiff wishes to incorporate is that his contact information would *not* be used for both security

19  and marketing.  Opp. at 19.  That is in direct conflict with the Privacy Policy, which states that

20  Twitter uses "email address [and] phone number" for "keeping your account secure and showing

21  you more relevant . . . ads."  Privacy Policy at 1; *see also id.* at 4 (Twitter "use[s] your contact

22  information, such as your email address and phone number" to "keep" your account "secure" and

23  to "market to you").  Plaintiff cannot rewrite the parties' contract.  Opp. at 19 (recognizing that

---

[12] Plaintiff's cases do not hold otherwise.  *Facebook Consumer Privacy* did not discuss when quasi-contract claims may be pled in the alternative and relied on cases that did not even consider the issue here.  402 F. Supp. 3d at 803.  *Cal. Spine and Neurosurgery Inst. v. United Healthcare Ins. Co.*, No. 19-CV-02417-LHK, 2019 WL 4450842, at *3 (N.D. Cal. Sept. 17, 2019), involved allegations that acknowledged an express contract may ***not*** have been formed between the parties.  And *Obertman v. Electrolux Home Care Prod., Inc.*, 482 F. Supp. 3d 1017, 1021 (E.D. Cal. 2020), involved claims related to a design defect, where plaintiff did not even allege a contract claim.  By contrast, here, the conduct underlying the quasi-contract claims is squarely governed by the Privacy Policy, and Plaintiff does not dispute the existence or validity of the Policy.  Mot. 19-20.

1   implied terms cannot "vary express terms").  Plaintiff's quasi-contract claims should be dismissed

2   with prejudice.  *See Total Coverage, Inc. v. Cendant Settle. Servs. Group, Inc.*, 252 F. App'x 123,

3   126 (9th Cir. 2007); *Day v. GEICO Cas. Co.*, 580 F. Supp. 3d 830, 841 (N.D. Cal. 2022).

4         In any event, even if this Court were to find that Plaintiff could plead his quasi-contract

5   claims in the alternative notwithstanding the express contract, those claims must still be dismissed

6   because the limitation of liability bars the indirect and consequential damages Plaintiff seeks under

7   these claims.  *See supra* Section A; *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1037 (N.D. Cal.

8   2019) (dismissing contract, implied contract, and quasi-contract claims under liability limitation).

9         **Statute of Limitations.**  Plaintiff's implied contract and unjust enrichment claims are also

10  barred by the applicable two-year statute of limitations, and his continued reliance on the

11  fraudulent concealment doctrine lacks merit and fails Rule 9(b)'s pleading requirements.[13]

12        As an initial matter, Plaintiff rests his fraudulent concealment argument on the same

13  conduct that underlies his entire Complaint, Opp. at 20-21, but he fails to acknowledge that "the

14  factual basis for fraudulent concealment must be distinct from [his] cause[s] of action."  Mot. at

15  22 (citing cases).  In any event, Twitter publicly disclosed that conduct on October 8, 2019, and

16  Plaintiff does not explain how the statute of limitations could be tolled based on fraudulent

17  concealment *after* Twitter made the alleged conduct widely and publicly known.  *See Oracle Am.,*

18  *Inc. v. Hewlett Packard Enter. Co.*, 971 F.3d 1042, 1048 (9th Cir. 2020) ("fraudulent concealment"

19  tolling doctrine applies only if defendant "used fraudulent means to keep the plaintiff unaware of

20  his cause of action").  Furthermore, while Plaintiff argues that he was "not obligated to investigate

21  [his] claims until [he] had reason to suspect [their] existence," Opp. at 21 (citation omitted), that

22  inquiry-notice standard is satisfied once information on the challenged conduct is publicly

23  disclosed, as it was here.  *See* Dkt. 31-5 (Twitter Announcement); Dkts. 31-8–10 (news articles);

24  *Reveal Chat Holdco, LLC v. Facebook, Inc.*, 471 F. Supp. 3d 981, 993-94 (N.D. Cal. 2020)

25  (fraudulent concealment doctrine inapplicable where conduct was publicized in articles and

26  announced by defendant in blogpost).  Under Plaintiff's contrary logic, even the FTC action would

27

28  ---

[13] Plaintiff does not dispute, and therefore concedes, that the delayed discovery doctrine does not support his tolling arguments.  *See* Mot. at 20-21; Opp. at 19-21.

1    not trigger the clock—something Plaintiff rightly refrains from arguing.  Opp. at 21.  But Plaintiff

2    provides no explanation as to why the FTC action put Plaintiff on notice of his claims, while

3    Twitter's announcement, which disclosed the same core facts, did not.  *Id.*

4          Additionally, Plaintiff effectively concedes that he fails to allege due diligence, Opp. at 21,

5    and his reliance on *Brown* is misplaced.  There, plaintiffs ***did*** allege "that they acted diligently in

6    trying to uncover the facts giving rise to their claim," *Brown v. Google, LLC*, 525 F. Supp. 3d

7    1049, 1071 (N.D. Cal. 2021); the court merely rejected Google's argument that plaintiffs should

8    have contacted Google with questions in order to discover their claims.  That reasoning is

9    inapposite here, where Twitter ***publicly announced*** the relevant conduct.

10         **No Wrongful Conduct.**  Plaintiff's implied contract and unjust enrichment claims also fail

11   because they are both premised on the same unsupported theory that Twitter misrepresented that

12   it would use contact information provided through security flows "only" for security purposes.

13   Opp. at 2-3.  As Twitter explained, Twitter made no such representations in any of the security

14   flow screens Plaintiff challenges, and Plaintiff's claims of misrepresentation are directly

15   contradicted by Twitter's Privacy Policy.  *See supra* Sections A-B; Mot. at 22-23.  Nor do

16   Plaintiff's allegations satisfy Rule 9(b)'s heightened pleading requirements.  Mot. at 22.

17         **D.    Plaintiff Is Not Entitled to Leave to Amend**

18         Plaintiff's opposition confirms that amendment would be futile.  The Complaint should

19   therefore be dismissed with prejudice and without leave to amend.  Plaintiff suggests Twitter relies

20   only on *Price*—"another, separate lawsuit."  Opp. at 27.  But Plaintiff ignores that ***he*** already filed

21   a separate federal lawsuit regarding the same legal and factual issues, on behalf of the same

22   purported class. *Gianakopoulos*, Dkt. 1; Mot. 23-24.  And that case was stayed pending resolution

23   of the substantially similar *Price* complaint.  That Plaintiff chose to file his second complaint not

24   in federal court, but as a new action in state court, should not provide him yet another bite at the

25   apple.  Even with the benefit of repeated briefing and Magistrate Judge Kim's assessment of

26   similar allegations, Plaintiff still fails to state a single claim.  Amendment would be futile.

27   **III.    CONCLUSION**

28         The Court should grant Twitter's Motion and dismiss the Complaint with prejudice.

1    DATED:  July 28, 2023                          Respectfully submitted,

2                                                   LATHAM & WATKINS LLP

3                                                     _/s/ Elizabeth L. Deeley_
                                                    Elizabeth L. Deeley (CA Bar No. 230798)
4                                                    elizabeth.deeley@lw.com
                                                    Whitney B. Weber (CA Bar No. 281160)
5                                                    whitney.weber@lw.com
                                                    505 Montgomery Street, Suite 2000
6                                                   San Francisco, California 94111-6538
                                                    Telephone: +1.415.391.0600
7
                                                    Michele D. Johnson (CA Bar No. 198298)
8                                                    michele.johnson@lw.com
                                                    650 Town Center Drive, 20th Floor
9                                                   Costa Mesa, California 92626-1925
                                                    Telephone: +1.714.755.8113
10
                                                    Susan E. Engel (*Pro Hac Vice*)
11                                                   susan.engel@lw.com
                                                    Margaret A. Upshaw (*Pro Hac Vice*)
12                                                   maggie.upshaw@lw.com
                                                    555 Eleventh Street, NW, Suite 1000
13                                                  Washington, D.C. 20004-1304
                                                    Telephone: +1.202.637.3309
14
15                                                  *Attorneys for X Corp., successor in interest to*
                                                    *named defendant Twitter, Inc.*
16
17
18
19
20
21
22
23
24
25
26
27
28