UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| HENRY YEH,<br><br>               Plaintiff,<br><br>     v.<br><br>TWITTER, INC.,<br><br>               Defendant. | Case No. 23-cv-01790-HSG<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND AND TERMINATING AS MOOT DEFENDANT'S MOTION TO DISMISS AND REQUEST FOR JUDICIAL NOTICE**<br><br>Re: Dkt. Nos. 22, 31, 32 |

Pending before the Court are Plaintiff Henry Yeh's motion to remand and Defendant Twitter's motion to dismiss.  Dkt. Nos. 22, 31.  The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted.  *See* Civil L.R. 7-1(b).  For the reasons discussed below, the Court **GRANTS** the motion to remand, Dkt. No. 22, and **TERMINATES AS MOOT** the motion to dismiss, Dkt. No. 31, as well as the associated request for judicial notice, Dkt. No. 32.

## I.    BACKGROUND

To provide adequate procedural background on this motion, the Court begins not with the origins of this case, but of another: *Price v. Twitter, Inc.  Price v. Twitter* was filed in May 2022 and alleged various state and common law causes of action arising from Twitter's allegedly deceptive disclosure and sale of user contact information for marketing purposes.[1]  Case No. 22-cv-03173, Dkt. No. 1.  Both parties consented to magistrate judge jurisdiction, and the case was assigned to The Honorable Sallie Kim.  On August 15, 2022, Twitter moved to dismiss the *Price*

---

[1] At the time of filing, the relevant defendant was known as "Twitter, Inc."  Now, of course, that entity is known as "X Corp."  Throughout this order, the Court will refer to the Defendant as "Twitter" for the sake of clarity and consistency.

United States District Court<br>Northern District of California

action, arguing, among other things, that the plaintiffs lacked Article III standing.  *Id.*, Dkt. No. 29 at 16–20.[2]  Its attack on standing was detailed and extensive: Twitter dedicated pages to arguing that the *Price* plaintiffs failed to establish "any particularized, concrete, or future injury from Twitter's alleged use of basic contact information to display more relevant advertising."  *Id.* at 20. Judge Kim agreed that the *Price* plaintiffs failed to adequately plead injury sufficient for standing, and on December 6, 2022, granted Twitter's motion with leave to amend.  *Id.*, Dkt. No. 50.

Meanwhile, virtually identical cases were bubbling up elsewhere in the district.  On August 15, 2022 – the same day Twitter filed its motion to dismiss in the *Price* action – a group of plaintiffs that included Henry Yeh filed *Gianakopoulos v. Twitter, Inc.*, Case No. 22-cv-04674-AGT.  A few days later, yet more plaintiffs initiated another follow-on action: *McClellan v. Twitter, Inc.*, Case No. 22-cv-04758-TSH.  On September 23, 2022, both the *Gianakopoulos* and *McClellan* actions were reassigned to Judge Kim.  *See* Case No. 22-cv-03173, Dkt. No. 38.

Accordingly, by the time the *Price* plaintiffs received Judge Kim's December ruling on Defendant's motion to dismiss, multiple cases had been filed alleging overlapping claims.  The *Price*, *Gianakoploulos*, and *McClellan* actions were consolidated in January 2023, *id.*, Dkt. No. 53, and the plaintiffs ultimately filed their consolidated amended complaint on February 6, 2023. *Id.*, Dkt. No. 56.  Notably, the consolidated complaint dropped Mr. Yeh as a named plaintiff.  *See id.*  On March 1, 2023, Twitter once again moved to dismiss the consolidated amended *Price* complaint, and once again argued that the plaintiffs' amended allegations did not support Article III standing.  *Id.*, Dkt. Nos. 59 (MTD II); 66 (Reply II).  In its Reply, however, Twitter asserted that because standing was intertwined with the merits for some of Plaintiffs' claims, the court could consider (and then dismiss) those claims on the merits.  *Id.*, Reply II at 10.

While Twitter's motion was pending, Mr. Yeh reappeared, only this time in state court. On March 10, 2023, Mr. Yeh (represented by the same counsel) filed a class action complaint substantively identical to the consolidated *Price* complaint in the San Francisco County Superior Court.  Defendants timely removed *Yeh v. Twitter, Inc.* to federal court, arguing that jurisdiction

---

[2] For ease of reference, the Court refers to the PDF pages rather than the document's internal pagination unless otherwise noted.

1   over this Class Action Fairness Action ("CAFA") case is proper under 28 U.S.C. §§ 1332(d)

2   (which vests district courts with original jurisdiction over civil actions in which the amount in

3   controversy exceeds $5 million, there is minimal diversity of citizenship between the parties, and

4   the action involves at least 100 class members), 1441, 1446, and 1453.  Case No. 23-cv-01790-

5   HSG, Dkt. No. 1.  On April 26, 2023, Judge Kim found that *Yeh* was related to the consolidated

6   *Price* action, and the case was reassigned to her.  *See* Case No. 22-cv-03173, Dkt. No. 72.

7   However, because Mr. Yeh did not consent to magistrate jurisdiction, the case was reassigned to

8   this Court.  Days later, the consolidated *Price* action was voluntarily dismissed without a ruling on

9   Twitter's second motion to dismiss.  *Id.*, Dkt. No. 77.

10          Following the dismissal and closure of the consolidated *Price* action, Mr. Yeh's case

11   remained before this Court.  *Yeh v. Twitter*, Case No. 23-cv-01790-HSG.[3]  On May 12, 2023, Mr.

12   Yeh moved to remand his case to state court, arguing that the Court's subject matter jurisdiction

13   was in question given Defendant's prior attacks on Article III standing for the similarly situated

14   *Price* plaintiffs.  Dkt. No. 22 ("Mot.").  Twitter moved to dismiss the case (on grounds other than

15   deficient standing), Dkt. No. 31, and then opposed Mr. Yeh's motion to remand, Dkt. No. 36.

16   ## II.   LEGAL STANDARD

17          A suit may be removed from state court to federal court only if the federal court would

18   have had subject matter jurisdiction over the case.  *See* 28 U.S.C. § 1441(a); *see Caterpillar Inc. v.*

19   *Williams*, 482 U.S. 386, 392 (1987) ("Only state-court actions that originally could have been filed

20   in federal court may be removed to federal court by the defendant.").  "If at any time before final

21   judgment it appears that the district court lacks subject matter jurisdiction, the case shall be

22   remanded."  28 U.S.C. § 1447(c); *see also Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir. 1992)

23   ("Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first

24   instance.").  Even in a CAFA case, where there is "no antiremoval presumption," *Dart Cherokee*

25   *Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 82 (2014), the removing party bears the burden

26   of establishing federal jurisdiction.  *See Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582

27

28   _____
[3] All docket references from this point on are to *Yeh v. Twitter Inc.*, Case No. 23-cv-01790-HSG, unless otherwise indicated.

United States District Court
Northern District of California

F.3d 1083, 1087 (9th Cir. 2009); *see also Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 685 (9th Cir. 2006) ("[U]nder CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction.").

Article III standing is a core component of a court's jurisdiction, without which a case cannot remain in federal court. *See Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004) ("A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit."); *see also TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203–07 (2021) (discussing Article III standing). Notably, "[t]he party invoking federal jurisdiction bears the burden of establishing" Article III's injury, redressability, and causation requirements. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *see also Jones v. Ford Motor Co.*, 85 F.4th 570, 573 (9th Cir. 2023) ("Upon removal, the burden to demonstrate Article III jurisdiction shifts to the Defendant as [t]he party invoking federal jurisdiction.") (internal quotations omitted); *Smelt v. Cnty. of Orange*, 447 F.3d 673, 632 (9th Cir. 2006) ("The burden of showing that there is standing rests on the shoulders of the party asserting it."). Where Article III standing is not established in a removed case, "the proper course is to remand for adjudication in state court." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 970 n.6 (9th Cir. 2018). This rules applies "to a case removed pursuant to CAFA as to any other type of removed case." *See Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016).

## III.   DISCUSSION

The parties do not dispute that on the facts of this case, statutory standing exists under CAFA. The only real dispute is whether Defendant has met its burden of establishing Article III standing. The Court agrees with Plaintiff that it has not, and accordingly will remand the case.

The crux of Plaintiff's motion is that Defendant – the party who invoked federal jurisdiction by removing the case from state court – bears the burden of showing that Mr. Yeh's claims articulate an injury-in-fact sufficient to confer Article III standing. Mot. at 4. Though all removing parties bear the burden of establishing federal jurisdiction, Twitter's task here is unusually challenging: since it previously spilled considerable ink in the *Price* action arguing that plaintiffs identically situated to Mr. Yeh had not shown Article III standing, Twitter's decision to

1   remove this materially identical case *to* federal court comes as something of a plot twist. *See* Mot.

2   at 2. Given the inconsistency between Defendant's arguments in *Price* and its actions in *Yeh*,

3   Plaintiff's motion puts Defendant on the spot to "submit support for standing." Mot at 4.

4        Defendant did not. To be sure, it did other things: it argued that there is "no antiremoval

5   presumption" under CAFA, and that the Court has jurisdiction to hear its claims because the

6   "jurisdictional arguments are intertwined with the merits." Dkt. No. 36 ("Opp.") at 7. But

7   nowhere in its opposition did Twitter "affirmatively state that Plaintiff has standing under Article

8   III" – let alone articulate how. Dkt. No. 40 ("Reply") at 7. Establishing jurisdiction (including

9   Article III standing) was Defendant's obligation as the party removing the case and invoking

10  federal jurisdiction. *See Jones*, 85 F.4th at 573; *see also Envtl. Research Ctr. v. Heartland*

11  *Products*, 29 F. Supp. 3d 1281, 1282 (C.D. Cal. 2014) (noting removing party bears the burden of

12  "establishing the existence of a case or controversy under Article III, including the core

13  component of standing.") (internal quotations omitted); *Brimer v. Amash Imports, Inc.*, No. C11-

14  5291 EMC, 2012 WL 13080724, at *2 (N.D. Cal. Jan. 10, 2012) ("As with removability generally,

15  the burden of proving that plaintiff has Article III standing is with the removing defendants.").

16  While Plaintiff admittedly did not put forward an affirmative argument as to why standing does

17  not exist (which would be the typical posture), the Court cannot ignore that Defendant already did.

18  Without Defendant now showing that standing is proper after previously arguing to the contrary,

19  the Court cannot consider the merits of the case. *See Bates v. United Parcel Service, Inc.*, 511

20  F.3d 974, 985 (9th Cir. 2007) (en banc) ("Standing is a threshold matter central to our subject

21  matter jurisdiction. We must assure ourselves that the constitutional standing requirements are

22  satisfied before proceeding to the merits."); *see also* Reply at 10 (collecting cases).

23       Though Defendant suggests that this Court *can* rule on the merits under Rule 12(b)(6)

24  instead of on jurisdictional grounds under 12(b)(1) because the "jurisdiction and merits [issues]

25  are intertwined," Opp. at 12–14, the Court is not persuaded. After carefully reviewing the parties'

26  cited cases, the Court is of the view that the "intertwined" principle is far narrower than Defendant

27  urges. Instead of granting courts broad license to review a case whenever merits and jurisdictional

28  questions overlap, the cited authorities suggest that the "intertwining of jurisdiction and merits

United States District Court
Northern District of California

5

may occur when a party's right to recovery rests upon the interpretation of *a federal statute that provides both the basis for the court's subject matter jurisdiction* and the plaintiff's claim for relief." *Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold & Easement in the Cloverly Subterranean, Geological Formation*, 524 F.3d 1090, 1094 (9th Cir. 2008) (emphasis added); *see also Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004); *Thornhill Publ'g Co. v. Gen. Tel. Co.*, 594 F.2d 730, 734 (9th Cir.1979).[4]  Since in this case the "jurisdiction inquiries do not arise under a federal statute, but instead under Article III," Reply at 13, that exceptional rule just does not apply.

   And though Defendant asserts that "absent 'truly frivolous' claims, issues that are intertwined with the merits are not matters of constitutional standing," it cites no authority clearly establishing this purported "bedrock principle."  Opp. at 13.  To the extent that Defendant raises this argument to suggest that this Court need not find Article III standing before proceeding to evaluate Plaintiff's UCL and contract claims, the Court finds no support for that contention, and the cases Defendant cite (which, as Plaintiff points out, did not arise in the context of remand) do not supply it.  In many of Defendant's cited cases, for example, the courts clearly addressed the question of Article III standing, even if they then proceeded to dismiss on the merits certain statutory claims for standing reasons.  *See, e.g.*, *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1042–43 (9th Cir. 2017) (performing Article III analysis); *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1138–39 (E.D. Cal. 2021) (same); *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1032–34 (N.D. Cal. 2019) (same).  These cases simply do not suggest that where jurisdiction is in doubt, as it is here, the Court can nonetheless proceed to rule on the merits of

---

[4] The only controlling case that Defendant cites is *Williston*, which clearly stands for the notion that resolution on Rule 12(b) rather than Rule 12(1) may be appropriate "where jurisdiction rises or falls, exclusively, on a federal statute." Opp. at 12; Reply at 12.  The only other authorities that Defendant cites are two district court cases.  In *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 788 (N.D. Cal. 2019), which did not involve a federal statute, the court referred to the "intertwined" principle, quoting *Williston*, but did not ultimately apply it or suggest that it should be applied beyond the context discussed in *Williston*.  The other case found similarly.  *Boston Sci. Corp. v. BioCardia, Inc.*, 524 F. Supp. 3d 914 (N.D. Cal. 2021).  The Court does not read these cases to run contrary to the well-established general rule, and finds it significant that both cases found as a preliminary matter that the plaintiffs at issue had Article III standing.  In other words, neither court ruled on the merits without first confirming its jurisdiction.

6

state and common law claims.

Ultimately, Defendant's argument that the Court can maintain jurisdiction under a plainly inapplicable "intertwined" theory falls short of establishing that Plaintiff has standing, which is its burden. Defendant's attempt to evade that burden here is notable given its prior arguments against standing. And while Defendant highlights that it is not seeking dismissal on standing grounds, Opp. at 6, that decision cannot itself establish Plaintiff's Article III standing, especially given Defendant's concerted standing attacks in *Price*, which Defendant admits involved "nearly identical injury allegations" as those here. Opp. at 14. Where "Defendant['s] prior standing arguments . . . leave doubt as to whether Plaintiff has Article III standing, Defendant[] cannot avoid" its jurisdictional burden as the removing party by agreeing to not seek dismissal for lack of standing. *Iglesias v. Welch Foods Inc.*, No. 17-CV-00219-TEH, 2017 WL 1227393, at *3 n.3 (N.D. Cal. Apr. 4, 2017).

For all of these reasons, the Court is persuaded that since Defendant did not meet its affirmative burden of establishing Plaintiff's Article III standing after previously putting it in question repeatedly in materially identical litigation, remand is appropriate. Courts "generally must remand" rather than dismiss cases where federal jurisdiction is in doubt. *Polo*, 833 F.3d at 1196. Remand is generally "the correct remedy because a failure of *federal* subject-matter jurisdiction means only that the federal courts have no power to adjudicate the matter." *Id.* (emphasis in original); *see also Davidson*, 889 F.3d at 970 n.6 (9th Cir. 2018). But state courts "are not bound by the constraints of Article III." *Polo*, 833 F.3d at 1196.

Notwithstanding these principles, Twitter argues that remand would be futile and the case must be dismissed "because Plaintiff cannot state core elements of his claims[.]" Opp. at 15. Even putting aside questions about the continuing vitality of the "futility" doctrine in this circuit, *see Polo*, 833 F.3d at 1197–99, the Court disagrees. As Plaintiff correctly points out, Defendant has not shown – as it must to secure dismissal rather than remand – that "the eventual outcome of [the] case after remand is so clear as to be foreordained." *Id.* at 1198. It only conclusorily asserts that dismissal is certain because Plaintiff's claims fail due to inadequate injury and damage allegations. Opp. at 15. The Court cannot conclude on this basis that Plaintiff's claims are

definitively doomed in state court, and accordingly will remand rather than dismiss.

IV.     **CONCLUSION**

   The Court **GRANTS** Plaintiff's motion to remand (Dkt. No. 22) and **TERMINATES AS MOOT** Defendant's motion to dismiss (Dkt. No. 31) and its associated request for judicial notice (Dkt. No. 32).  The Court **REMANDS** the case to San Francisco Superior Court. The Clerk is **DIRECTED** to close the case.

   **IT IS SO ORDERED.**

Dated:  December 4, 2023

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge